Larry SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 68906.

Court of Criminal Appeals of Texas, En Banc.

Sept. 19, 1984.

Rehearing Denied Jan. 30, 1985.

C. Wayne Huff, Mike Barclay, Mark Stoltz, Dallas (Court-Appointed), for appellant.

Henry Wade, Dist. Atty., Anne B. Wetherholt, Norman Kinne, Rider Scott and Marian Bentley, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for capital murder. V.T.C.A., Penal Code, § 19.03(a)(3). The jury answered affirmatively the three special issues submitted, and punishment was assessed at death. Article 37.071, V.A.C.C.P., and V.T.C.A., Penal Code, § 12.31(a).

On appeal appellant contends that the court erred in sustaining three of the State's challenges for cause during voir dire examination of the jury panel, including a claimed violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). In other grounds of error appellant complains of the introduction of certain photographs of the deceased, of an officer's testimony that substance in a photograph was blood, and of the introduction of a cash register drawer. He also urges the court erred in admitting details of a prior conviction and details of an unadjudicated robbery offense, and erred in admitting a pen packet because the prior felony conviction was based on an information without a waiver of indictment.

Appellant further challenges the sufficiency of the evidence to support the second special issue under Article 37.071, supra, and to show he would commit criminal acts of violence that would constitute a continuing threat to society. He also complains of certain questions propounded to witnesses at the penalty stage of the trial and attacks V.T.C.A., Penal Code, § 12.-31(a), and Article 37.071, supra, as being in violation of the constitutional prohibition against cruel and unusual punishment.

On February 3, 1978, Fred Norris was a 16-year-old school boy who worked part time two nights a week at the Seven-Eleven store at Camp Wisdom and Polk in Dallas. He worked from midnight into the early morning hours. Norris knew Mike Mason, the deceased, the night manager of the store. They had been friends for seven years.

At 3:15 a.m. on the date in question Mason and Norris were the only employees

on duty. Norris was sweeping the front porch in a well-lighted area when a man walked by and spoke to him. The man was wearing a toboggan cap but no disguise on his face. Norris identified the man as the appellant whom Norris observed enter the store. After finishing the sweeping, Norris entered the store and at this time another man also entered the store. Norris proceeded to the frozen food section to get a pizza. When he turned around, he saw the appellant pull down the cap over his face converting into a ski mask. Appellant had a pistol in his hand and was standing at the main register across from Mason. The second man had positioned himself to the left. The cash drawer was on the counter.

The second man went around the counter and threw Mason to the ground, shoving his face into the floor. Both appellant and the second man demanded Mason open the safe. Appellant stated, "Open the safe or I'll blow your head off." Mason explained that he didn't have the two keys needed and could not open the safe. The second man kicked Mason all over his body, stomped on his hands, and came from behind the counter taking the cash drawer with him. As he left appellant, still pointing the pistol, backed towards the front doors to exit, and then came forward and leaned over the counter. Holding the pistol with both hands, appellant fired one shot at Mason who was lying flat on the floor, face down. After appellant left the store, Norris spoke to Mason, and in a weak voice he uttered the name "Fred." Norris found he could not use the telephone and ran across the street to the Jack in the Box restaurant. Someone there called the police.

Dallas Police Officer Bill Parker testified he arrested Glouster Ray Smith, the second man, in the afternoon of February 3, 1978. At the time of the arrest the officer recovered a fully loaded .22 caliber Clerke pistol and found a ski mask on the floorboard of the car in which the suspect was arrested. At 4 a.m. on February 4, 1978, the second man led the witness to a wooded area near the 5100 block of Watson Street in Dallas where a cash drawer or tray with a chip on it was found. A cash register receipt from the cash drawer was shown to be from the cash register at the Seven-Eleven store in question. Appellant's fingerprints were found on the cash drawer.

When police went to arrest the appellant, he fled. The police gave chase, and after searching the neighborhood, found him hiding in a bedroom closet.

The cause of death was shown to be a bullet wound to the left back of the 26-year-old male. The bullet traveled through the aorta and pulmonary artery. The bullet which killed Mason was a .22 caliber hollow-point tip. Norris identified the ski mask found when the second man was arrested as the ski mask used in the robbery, and identified State's exhibit 15 as appearing similar to the pistol used by appellant during the offense.

Appellant offered no evidence at the guilt stage of the proceeding.

At the penalty stage of the trial the State offered evidence of appellant's reputation for being a peaceful and law-abiding person, evidence of his prior convictions in Colorado, evidence of an unadjudicated robbery in Colorado, and evidence from a psychiatrist as to appellant's future dangerousness. Appellant produced a psychologist who testified that psychiatric testimony could not predict future dangerousness.

The jury affirmatively answered all three special issues submitted under Article 37.-071, V.A.C.C.P.

Appellant initially urges the trial court erred in sustaining the State's challenge for cause to prospective juror Johnnie Mae Hall because she could never assess the minimum punishment in a felony murder case.

Appellant recognizes the provisions of Article 35.16(b)(3),[1] and that his contention

1. Article 35.16(b)(3), V.A.C.C.P., provides:
 "(b) A challenge for cause may be made by the State for any of the following reasons: ...

 "(3) That he has a bias or prejudice against any phase of the law upon which the State is

was rejected in *Bodde v. State,* 568 S.W.2d 344 (Tex.Cr.App.1978); *Chambers v. State,* 568 S.W.2d 313 (Tex.Cr.App.1978); and *Moore v. State,* 542 S.W.2d 664, 669 (Tex. Cr.App.1976). He asks that these decisions be overturned because otherwise he will be deprived of "due process" under the Texas Constitution[2] and of equal protection under both the federal and state constitutions.

He argues that the prosecution is not really harmed by a prospective juror who wants to assess more than the minimum in the event of a conviction.

This Court discussed the application of Article 35.16(b)(3) in *Huffman v. State,* 450 S.W.2d 858, 861–862 (Tex.Cr.App.1970), and we adhere to the reasoning there. See also *Cherry v. State,* 488 S.W.2d 744, 751 (Tex. Cr.App.1972).

In *Hernandez v. State,* 643 S.W.2d 397, 402 (Tex.Cr.App.1982), a capital murder case, this Court wrote:

"We find no error in the trial court's exclusion of Gomez; his answers certainly reflect a bias against the minimum punishment. See *Chambers v. State,* 568 S.W.2d 313 (Tex.Cr.App.1978); *Moore v. State,* 542 S.W.2d 664 (Tex.Cr. App.1976). Furthermore, the appellant has not shown that he was tried by a jury to which he had a legitimate objection. See *Henriksen v. State,* 500 S.W.2d 491 (Tex.Cr.App.1973)."

The ground of error is overruled.

█ Appellant contends the court erred in sustaining the State's challenge for cause to venireman Eaker when he was not disqualified under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). Specially, appellant asserts Eaker was not shown to be so irrevocably opposed to capital punishment that he could not follow the law or obey the instructions of the trial court.

Mark Eaker stated he was opposed to the policy of death as a punishment for crime, but understood it was the law. He did not relish the possibility of being placed in position to decide whether the death penalty would be imposed. Eaker related he had served in the Navy on a nuclear submarine, and had the duty of seeing that missiles were targeted on selected sites that changed from day to day or week to week. While he agreed with the defense policy of using nuclear submarines on patrol, he questioned, even doubted he would have ever obeyed any command to fire a missile knowing the number of resulting deaths of Soviet citizens. When asked if he could take and follow the oath prescribed by Article 35.22, V.A.C.C.P.,[3] he eventually stated he would have no difficulty with the guilt stage of the trial as that would be determining "a historical fact," but he had serious reservations about answering the questions at the penalty stage which could result in the death penalty. As to the second special issue under Article 37.071, V.A.C. C.P., he commented:

"Well, it's a silly law, because beyond a reasonable doubt there is a probability that exists that everyone in this room is going to commit an act of violence...

"My guess is that most members of the legislature don't understand what probability means."

Eaker gave some conflicting responses. At times he seems clearly disqualified under *Witherspoon* and then by his own statements seemed to rehabilitate himself.

---

entitled to rely for conviction *or punishment.*" (Emphasis supplied.)

**2.** Apparent reference is to the "due course of law." Article I, § 19, Tex.Const. The "due course of law" in the Texas Constitution to the due process of the law under the United States Constitution. *Mellinger v. Houston,* 68 Tex. 37, 3 S.W. 249 (Tex.1887).

**3.** Article 35.22, V.A.C.C.P., provides:

"When the jury has been selected, the following oath shall be administered them by the court or under its direction. 'You and each of you do solemnly swear that in the case of the State of Texas against the defendant, you will a true verdict render *according to the law and the evidence,* so help you God.'" (Emphasis supplied.)

When asked, however, if he could follow the Article 35.22 oath with regard to the special issues at the penalty stage of the trial, he repeatedly stated that even if the State proved from the evidence beyond a reasonable doubt that the questions should be answered "yes," he would violate the oath and vote "no" because of his view on the death penalty. He then added, however, that under some circumstances he could answer "yes" to the special issues if the State sustained its burden. After again stating his opposition to the death penalty, the court took over the interrogation to resolve any conflict. Finally the record reflects:

"The Court: ... Your feelings about the death penalty are so strong you would ignore the law or violate your oath in some way?

"Prospective Juror (Eaker): Yes, I would."

Thereafter the court sustained the State's challenge for cause over objection that Eaker had not been shown to be disqualified under *Witherspoon* and *Adams.*

In *Witherspoon v. Illinois,* supra, the United States Supreme Court held that a prospective juror may not be excluded by the trial court for cause unless that person makes it absolutely and unmistakably clear that 1) he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, or 2) that the prospective juror's attitude towards the death penalty would prevent him from making an impartial decision as to the defendant's guilt.

In *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), the question presented was whether Texas contravened the Sixth and Fourteenth Amendments of the United States Constitution as construed and applied in *Witherspoon* when it excluded members of the venire from jury service because they were unable to state under oath as prescribed by V.T.C.A., Penal Code, § 12.31(b), that the mandatory penalty of death or life imprisonment in a capital mur-

der case would not affect their deliberations on any issue of fact.

The United States Supreme Court reversed the *Adams* conviction and set aside the death penalty imposed holding that *Witherspoon* and said § 12.31(b) may not co-exist as separate and independent bases for excluding prospective jurors so as to permit exclusion under § 12.31(b) on a ground broader than permitted by *Witherspoon.* The Court noted, however, that the State could, consistent with *Witherspoon,* use § 12.31(b) to exclude prospective jurors whose views in capital punishment are such as to make them unable to follow the law or obey their oaths.[4]

In *Adams* the Court, referring to note 21 of the *Witherspoon* opinion, stated:

"This statement seems clearly designed to accommodate the State's legitimate interest in obtaining jurors who could follow their instructions and obey their oaths. For example, a juror would no doubt violate his oath if he were not impartial on the question of guilt...

"[T]he general proposition [is] that a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. The State may insist, however, that jurors will consider and decide the facts impartially and conscientiously apply the law as charged by the court.

\* \* \* \* \* \*

If the juror is to obey his oath and follow the law of Texas, he must be willing not only to accept that in certain circumstances death is an acceptable penalty but also to answer the statutory questions without conscious distortion or bias. The State does not violate the Witherspoon doctrine when it excludes prospective jurors who are unable or unwilling to address the penalty questions with this degree of impartiality.

\* \* \* \* \* \*

---

4. See now *Evans v. State,* 614 S.W.2d 414 (Tex. Cr.App.1980).

"We repeat that the State may bar from jury service those whose beliefs about capital punishment would lead them to ignore the law or violate their oaths."

In *Williams v. State*, 622 S.W.2d 116, 118 (Tex.Cr.App.1981), it was held that certain veniremen whose views on the death penalty would have prevented or substantially impaired their performance as jurors in accordance with their instructions were properly excused in light of *Witherspoon* and *Adams*. See also *Bass v. State*, 622 S.W.2d 101, 108 (Tex.Cr.App.1981); *Porter v. State*, 623 S.W.2d 374 (Tex.Cr.App.1981); *Griffin v. State*, 665 S.W.2d 762 (Tex.Cr. App.1983).

Based on the record before us, we conclude that venireman Eaker was unable or unwilling to consider the statutory special issues with the degree of impartiality to which the State was entitled. The testimony of Eaker made it clear that he "could not be trusted to abide by existing law or follow conscientiously the instructions of the trial judge" without violating or disobeying his oath to render a true verdict according to the law and evidence in the case. *Porter v. State*, 623 S.W.2d 374, 379 (Tex.Cr.App.1981). See also *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Ex parte Chambers*, 612 S.W.2d 572 (Tex.Cr.App.1981); *Sanne v. State*, 609 S.W.2d 762 (Tex.Cr.App.1980).

The trial judge did not err in sustaining the State's challenge for cause.[5] See *Smith v. State*, 676 S.W.2d 379 (Tex.Cr. App.1984). Appellant's ground of error is overruled.

Next appellant contends the trial court erred in sustaining the State's challenge for cause to venireman Thomason.

Bonnie Lou Thomason told the prosecutor she knew Dr. Holbrook whose name was on a list of witnesses. Stating she was nervous and on medication, Thomason related that five years earlier she had suffered a nervous breakdown. While Dr. Holbrook was not her treating psychiatrist, he worked in the same clinic and had been in the room when electric shock treatments were administered to her. She stated she had confidence in Holbrook. It was explained that Dr. Holbrook was now deceased, but that his reports might be admissible and form a part of the evidence in the instance case. When asked, Thomason stated she would "possibly" give more weight to Holbrook's testimony than any other witness and have a bias in favor of his testimony. Thomason told appellant's counsel she would weigh Holbrook's testimony in light of her experience and wouldn't believe it if it was unreasonable. Upon interrogation by the court, she said she trusted Dr. Holbrook and would have a bias in favor of his testimony and would possibly give his testimony more weight. To the prosecutor she related Holbrook's testimony would be more believable to her because she knew him. She knew she would be expected to put aside any preconceived notions about the credibility of a witness' testimony, but didn't know if she could do that with Holbrook's testimony.

The court sustained the State's challenge for cause over objection that bias had not been shown.

■ The trial court has wide discretion over the course of the voir dire examination of the jury panel. *Abron v. State*, 523 S.W.2d 405 (Tex.Cr.App.1975); *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976).[6]

■ In order to complain of the improper exclusion of a qualified juror the defendant

---

5. Further, until the conclusion of his voir dire examination Eaker was an "equivocating juror," and it must be remembered that the trial judge heard the tone of his voice and observed his demeanor and was in the better position to pass on the challenge for cause presented. See *Tezeno v. State*, 484 S.W.2d 374 (Tex.Cr.App.1972); *Villareal v. State*, 576 S.W.2d 51 (Tex.Cr.App.

1978). See also *Garza v. State*, 622 S.W.2d 85, 92 (Tex.Cr.App.1981).

6. Article 35.21, V.A.C.C.P., provides that

"The court is the judge, after the proper examination of the qualifications of a juror, and shall decide all challenges without delay and without argument thereupon."

must show he was injured or forced to proceed with an objectionable juror. *Page v. State*, 486 S.W.2d 300 (Tex.Cr.App.1972). See also *Brown v. State*, 508 S.W.2d 91 (Tex.Cr.App.1974). A mere assertion in an appellate brief will not constitute the proper showing.

In *McCary v. State*, 477 S.W.2d 624 (Tex.Cr.App.1972), a prosecution for possession of heroin, a prospective juror stated her son-in-law was indicted for possession of marijuana, and while she would try to be fair and impartial, she felt the facts "are so close to my own family would probably influence me." Although she was excused over objection, this Court found no abuse of discretion. See also *Noah v. State*, 495 S.W.2d 260 (Tex.Cr.App.1973).

In *Pearce v. State*, 513 S.W.2d 539 (Tex.Cr.App.1974), a prospective juror was improperly excused as there was no challenge for cause by the State and no absolute disqualification. This Court held that the action was not prejudicial in absence of a showing by the defendant that he had an unfair jury or was otherwise harmed. See *Henriksen v. State*, 500 S.W.2d 491 (Tex.Cr.App.1973).

In the instant case even if it can be argued that the action of the trial court was improper, there is no showing that appellant was tried by an unfair jury or was otherwise harmed.[7] The ground of error is overruled.

Appellant's next two grounds of error complain of the admission of three photographs of the deceased. In appellant's fourth ground of error, appellant urges that the trial court erred in admitting two photographs (State's Exhibits 12 and 13), over appellant's objections, which depicted the deceased at the scene of the crime. Specifically, appellant contends that the State failed to lay the proper predicate for the admission of the photographs. Appellant's fifth ground of error alleges that the trial court erred in overruling his objection

to the introduction in evidence of a photograph (State's Exhibit 14) taken of the deceased at the scene due to the fact that the body as depicted in the photograph had been moved from the location that the deceased died.

The record reflects that Fred Milligan, a police officer assigned to the Physical Evidence Section of the Dallas Police Department, took the photographs (State's Exhibit Nos. 12, 13 and 14) of the deceased at the scene and testified at trial that State's Exhibit Nos. 12 and 13 showed the body as he saw it when he arrived at the scene of the crime at about 3:00 a.m. on February 3, 1978. Appellant's objection to the admission of State's Exhibit Nos. 12 and 13 on the ground that Milligan did not know whether the body was in the exact position as when the deceased died was overruled. As to State's Exhibit No. 14, Milligan testified that the body of deceased was rolled over at the scene prior to taking that photograph in an effort to ascertain what, if anything, was under the body. We will address appellant's ground of error #4 first.

The appellant relies upon *Goss v. State*, 549 S.W.2d 404 (Tex.Cr.App.1978), in support of his contention that the State failed to properly authenticate the photographs as depicting the same condition as at the scene of the crime by someone with personal knowledge. Such reliance is misplaced. First, the record reflects Milligan had personal knowledge for he personally took the photographs and then testified before the jury that State's Exhibit Nos. 12 and 13 showed the body as he arrived at the scene shortly after the shooting occurred. Furthermore, reversible error occurred in *Goss v. State*, supra, because the witness therein did not testify that she had personal knowledge that the photographs actually depicted what they purported to depict. In appellant's case, Milligan did testify that the photographs actually depicted what they purported to depict.

---

7. There is no showing that the State exhausted its peremptory challenges, and such juror would have served except for the court's action. *Weav-*

*er v. State*, 476 S.W.2d 326 (Tex.Cr.App.1972); *Pearce v. State*, 513 S.W.2d 539 (Tex.Cr.App. 1974).

In *Martin v. State*, 475 S.W.2d 265 (Tex. Cr.App.1972), we held that

"... if a verbal description of the body and the scene would be admissible, a photograph depicting the same is admissible." 475 S.W.2d at 267.

Furthermore, in *Clark v. State*, 627 S.W.2d 693 (Tex.Cr.App.1981), we held that photographs depicting the deceased lying in blood at the scene were admissible because a verbal description of the body and the scene were admissible. Additionally, such evidence is useful as an aid to the jury in interpreting and understanding the testimony adduced at trial. *Martin v. State*, supra; *Smith v. State*, 460 S.W.2d 143 (Tex.Cr.App.1970); *Rivera v. State*, 437 S.W.2d 855 (Tex.Cr.App.1969). As we stated in *Harrington v. State*, 547 S.W.2d 621 (Tex.Cr.App.1977):

"If a photograph is competent, material and relevant to the issues on trial, the photograph will not be inadmissible because it is gruesome, unless it is offered solely to inflame the minds of the jury." 547 S.W.2d at 625.

Determination as to the admissibility of photographic evidence rests largely in the discretion of the trial judge. *Lanham v. State*, 474 S.W.2d 197 (Tex.Cr.App.1971).

Based upon the record, we conclude it was not an abuse of discretion in admitting State's Exhibit Nos. 12 and 13 into evidence. Hence, appellant's fourth ground of error is overruled.

■ With reference to appellant's ground of error number five, appellant's reliance on *Bailey v. State*, 532 S.W.2d 316 (Tex.Cr.App.1975), is misplaced. This Court in *Bailey v. State*, supra, stated:

"*Terry* cannot be construed to prevent the admission of relevant photographs merely because the deceased has been removed to clinical surroundings ... Only where the results of surgery have obfuscated the results of the crime will otherwise accurate depictions be inadmissible." 532 S.W.2d at 321.

The Court was referring to *Terry v. State*, 491 S.W.2d 161 (Tex.Cr.App.1973), where we held that four photographs of a child's body taken after an autopsy had been performed were inadmissible for the reason that they depicted "massive mutilation of the subject matter caused by the surgery in performing the autopsy." This court went on to say in *Bailey v. State*, supra, with reference to the photographs in *Terry*, that "... *in the absence of explanation*, their probative value was outweighed by their inflammatory nature." 532 S.W.2d at 321.[8]

In appellant's case, we do not have any "massive mutilation of the subject matter"; in fact, the record reflects no change in the physical condition of the deceased other than being rolled over, face up. Furthermore, Officer Milligan testified that the body was rolled over and the reason for such action. We find no abuse of discretion in the admission of State's Exhibit 14. Appellant's fifth ground of error is overruled.

■ In appellant's next ground of error, he alleges that the trial court erred in overruling his objection to a police officer's testimonyh that a substance in a photograph was blood. The record reflects that Officer Milligan took photographs, including State's Exhibit Nos. 12 and 14, of the crime scene. Upon being shown State's Exhibit No. 12 and asked whether a large blood spot depicted therein was human blood, appellant objected "... unless he lays a predicate." That objection was overruled by the trial court.

The prosecutor then proceeded to ask Milligan regarding his prior experience at murder scenes, and whether he had come upon other scenes of blood and had the opportunity to form an opinion as to whether such fluids were blood. Milligan answered in the affirmative.

Thereafter, the following questioning of Milligan by the prosecutor took place:

"Q: Did you have an opportunity to form an opinion as to whether or

8. Emphasis is that of the writer's unless otherwise noted.

not the dark red spots shown on State's Exhibit 12 was, in fact, of human blood origin?

"A: Yes, sir.

"Q: And what's that opinion?

"A: That it was human blood."

Then later on with reference to State's Exhibit 14, another photograph taken of the deceased at the scene by Milligan, the following transpired between the prosecutor and Milligan:

"Q: All right. Would you show us, first of all, the wet spots both on the carpet and the body of Mr. Mason, if you could, please, Officer Milligan.

"A: This is the picture of the wet spot I was talking about earlier. This is a photograph of blood and the telephone.

"* * *

"Q: That is in the middle of a dark red substance. What did that appear to be?

"A: Blood."

We first note that appellant's objection originally was too general and, therefore, failed to preserve any error on appeal. *Williams v. State,* 596 S.W.2d 862, 866 (Tex.Cr.App.1980); *Stutes v. State,* 530 S.W.2d 309 (Tex.Cr.App.1975).

▇▇▇▇ Assuming arguendo, however, that appellant's objection was specific and preserved the error complained of, we note that the sufficiency of a predicate is addressed to the discretion of the trial court and will not be reversed absent an abuse of discretion, *Anderson v. State,* 621 S.W.2d 805 (Tex.Cr.App.1981). In *Denham v. State,* 574 S.W.2d 129 (Tex.Cr.App.1978), we held that a lay witness may give his opinion regarding things within his common knowledge. Further, a police officer may give an opinion concerning physical facts he has observed which are within his experience. *Holding v. State,* 460 S.W.2d 133 (Tex.Cr.App.1970). The record herein reflects that Milligan had past experience investigating murder scenes and based upon that experience, was competent to testify to the identity of blood. We conclude that there was no abuse of discretion in allowing Milligan to testify to the identity of blood in the complained of photographs.

Based on all of the foregoing, appellant's sixth ground of error is overruled.

▇▇▇▇ Appellant complains in his seventh ground of error that the trial court erred in overruling his objection to the introduction of State's Exhibit No. 22, a cash drawer or tray from a cash register. The record reflects that around 4:00 a.m., approximately 25 hours after the murder herein, Sgt. Parker and Investigator Maxim, both Dallas police officers, accompanied Gloster Ray Smith to an area of uninhabited woods. Approximately 100 feet off the street into the woods, a cash tray was recovered. Subsequent analysis and examination of that tray revealed fingerprints which matched those of the appellant.

Further testimony revealed that the cash tray which was actually taken in the robbery was damaged with a chip nicked out of its side. Although the record is not completely clear as to what ultimately happened to that cash tray, the testimony reveals it was lost, apparently being disposed of by Southland Corporation, of which Seven-Eleven is a subsidiary. It was further developed that State's Exhibit 22 was a duplicate of the original cash tray taken in the robbery, with the exception that it did not have the damaged chip out of its side.

Appellant objected to the admission of State's Exhibit 22 on the grounds that a proper predicate had not been laid, and that it was irrelevant, immaterial and incompetent. That objection was overruled and State's Exhibit 22 was admitted.

At the outset, we note that appellant's objection was too general and vague to apprise the trial court of the alleged error and, thus, failed to preserve anything for review. *Williams v. State,* 596 S.W.2d 862, 866 (Tex.Cr.App.1980); *Garcia v. State,* 573 S.W.2d 12, 16 (Tex.Cr.App.1978).

We, however, will proceed to address the alleged error as if it had been properly

preserved. It is within the discretion of the trial court to determine the sufficiency of a predicate and absent an abuse of discretion, the trial court's decision will not be reversed. *Anderson v. State,* 621 S.W.2d 805, 809–810 (Tex.Cr.App.1981).

 Further, this Court has held that it is within the discretion of the trial court to permit a witness to use a physical object to illustrate his testimony. See *Edwards v. State,* 171 Tex.Cr.R. 70, 344 S.W.2d 687 (1961). When that object is helpful in clarifying a witness' testimony for the jury and there is little or no danger that the jury will be misled into believing that the admitted object is the actual item in question but rather just a representation or similarity of the actual object in question, then no reversible error will arise unless the prejudicial effect outweighs its probative value. See *Marion v. State,* 387 S.W.2d 56 (Tex. Cr.App.1964).

In *Marion v. State,* supra, we held that no error arose from allowing a pathologist use of a plastic skull which was a correct replica of a human skull, in order to make her testimony clearer to the jury. In *Jenes v. State,* 127 Tex.Cr.R. 518, 77 S.W.2d 681 (Tex.Cr.App.1935), we held there was no error in allowing a police officer to appear in court wearing a uniform identified by a witness as the same kind of uniform worn by the deceased.

 In appellant's case, the testimony before the jury made it clear that State's Exhibit 22 was not the actual cash tray taken in the robbery in question, but an accurate duplicate of same. Further, the use of such tray aided the jury in understanding the testimony regarding the lack of Smith's fingerprints on the original cash tray and the presence of appellant's thereon. Based on the foregoing, we conclude that the trial court did not abuse his discretion in admitting State's Exhibit 22. Appellant's seventh ground of error is overruled.

In two grounds of error appellant contends the court erred in admitting, over objections, details of his prior Colorado conviction and details of an unadjudicated robbery offense occurring in Colorado.

Appellant argues that in so far as Article 37.071, V.A.C.C.P., permits a different and broad standard of evidence as to prior criminal record than Article 37.07, V.A.C.C.P., it is in violation of the equal protection provision of the Fourteenth Amendment, United States Constitution.[9]

Article 37.071(a), V.A.C.C.P., provides in part:

"... In the proceeding, evidence may be presented as to *any matter* that the court deems *relevant to sentence.* This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Texas." (Emphasis supplied.)[10]

 Thus the trial court at the penalty stage of a capital murder trial has wide discretion in admitting or excluding evidence. *Robinson v. State,* 548 S.W.2d 63 (Tex.Cr.App.1977); *Felder v. State,* 564 S.W.2d 776 (Tex.Cr.App.1978), cert. den. 440 U.S. 950, 99 S.Ct. 1433, 59 L.Ed.2d 640; *Hammett v. State,* 578 S.W.2d 699 (Tex.Cr. App.1979); *McManus v. State,* 591 S.W.2d 505 (Tex.Cr.App.1979); *Sanne v. State,* 609 S.W.2d 762 (Tex.Cr.App.1980). See also *Green v. State,* 587 S.W.2d 167 (Tex.Cr. App.1979); *Davis v. State,* 597 S.W.2d 358 (Tex.Cr.App.1980), cert. den. 449 U.S. 976, 101 S.Ct. 388, 66 L.Ed.2d 238.

However, it has been said that this discretion extends only to the question of rele-

9. The only case cited by appellant is *Lege v. State,* 501 S.W.2d 880 (Tex.Cr.App.1973), which involved an application of Article 37.07, V.A.C. C.P., to a non-capital case, not article 37.071, supra, which is applicable to the trial of capital murder cases.

10. In *Earvin v. State,* 582 S.W.2d 794, 799 (Tex. Cr.App.1979), this Court wrote:

"Under Article 37.071(a), V.A.C.C.P., the court is authorized to admit any evidence which is relevant to the punishment, and the jury is authorized to consider this relevant evidence along with that adduced at the guilt-innocence phase of the trial.

vance of the facts sought to be proved, and that Article 37.071(a), supra, does not alter the rules of evidence insofar as the manner of proof is concerned. See *Porter v. State*, 578 S.W.2d 742, 748 (Tex.Cr.App.1979).

In *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), the United States Supreme Court held a jury must have all relevant information to determine the fate of a defendant in a capital case. The details of a prior offense and conviction which reveals its severity, is one such factor of the relevant information a jury must have. See *Robinson v. State*, supra; *Davis v. State*, supra.

In *Green v. State*, supra, it was held under Article 37.071, supra, that it was within the discretion of the court to admit the testimony of a deputy sheriff showing details of a similar murder committed approximately one month after the charged offense including a verbal description of the body of the subsequent victim.

And in *Davis v. State*, supra, it was held not error for the court in a capital murder case, after admitting four prior convictions of the defendant, to permit the State to call witnesses to testify as to the details of the events which formed the bases of the prior convictions.

It has also been consistently held that evidence of unadjudicated extraneous offenses are admissible at the penalty stage of a capital murder trial absent a showing of unfair surprise. *Quinones v. State*, 592 S.W.2d 933 (Tex.Cr.App.1980), cert. den. 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121; *Crawford v. State*, 617 S.W.2d 925 (Tex.Cr.App.1980); *Rumbaugh v. State*, 629 S.W.2d 747 (Tex.Cr.App.1982). And such admission does not render the proceedings fundamentally unfair or deprive an accused of due process and equal protection of the laws. *Williams v. State*, 622 S.W.2d 116 (Tex.Cr.App.1982), cert. den. 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876. See also *Garcia v. State*, 581 S.W.2d 168 (Tex.Cr.App.1979).

The grounds of error are overruled.

In appellant's tenth ground of error, he alleges that the trial court erred in overruling his objection to the introduction of State's Exhibit 36, a Colorado Penitentiary Packet, for enhancement of punishment purposes which revealed a prior conviction, on the basis that appellant was convicted on an information and no waiver of indictment was shown by the State. In State's Exhibit 36 was a copy of a judgment which did not reflect a waiver of indictment by appellant. Appellant contends that in the absence of a showing that Colorado law allows felony convictions on an information without a waiver of indictment, the laws of Texas apply which allows prosecution of a felony by information only if the defendant waives indictment in open court or by written instrument. See Article 1.141, V.A.C. C.P. Succinctly, appellant contends the State failed in its proof showing such a waiver and thus, cannot use the prior Colorado conviction for the enhancement purposes herein.

We disagree with appellant's contention and have so stated previously in *Acosta v. State*, 650 S.W.2d 827 (Tex.Cr.App.1983). Although, we note at the outset, that the better practice would have been for the State to have either shown a waiver by appellant or that the laws of Colorado do not require indictments, such proof is not required by the State, and no reversible error will result from a lack thereof. See *Acosta v. State*, supra.

It is true that in the absence of proof of the laws of another state, it is presumed that the law of that state is the same as this state. *Ex parte Nichols*, 604 S.W.2d 81 (Tex.Cr.App.1979). With that in mind, and because the allegations of prior convictions in appellant's case were for noncapital felonies which occurred after the effective date of Article 1.141, supra, Article 1.141 is applicable. However, even though "... Texas law requires an affirmative waiver of an indictment in a non-capital felony case, there is no requirement that the waiver of necessity be reflected in

a formal judgment or sentence." *Acosta v. State,* supra at 833 (Concurring opinion).

■ Furthermore, where the State makes a prima facie showing that a judgment of conviction used for enhancement purposes and the resulting sentence is regular on its face, there is a presumption of regularity of the judgment. *Moore v. State,* 629 S.W.2d 266 (Tex.Cr.App.1982). Once the State makes that prima facie showing, the burden shifts to the defendant, who must make an affirmative showing of any defect in the judgment. *Moore v. State,* supra; *Arbuckle v. State,* 132 Tex.Cr.R. 371, 105 S.W.2d 219 (1937); *Carter v. State,* 510 S.W.2d 323 (Tex.Cr.App. 1974).

In appellant's case, the judgments, sentences and pen packets were properly certified and appellant was identified with them by a fingerprint expert in open court. The State having made this prima facie showing, the burden shifted to appellant to show that the prior convictions were void for lack of waiver of indictment in each case. The appellant not having presented any affirmative evidence to this effect, failed to sustain his burden. Ground of error number ten is overruled.

■ In appellant's eleventh ground of error, he alleges that the prosecutor erred in eliciting from Wendell L. Dickerson, a psychologist who testified as a witness for appellant during the punishment stage of the trial, that if the defense had a psychiatrist examine appellant, then the State would have the right to have a psychiatrist examine him also. Appellant's objection that the question proposed a misstatement of the law was sustained, and the jury was promptly instructed to disregard the question and any answer. Appellant's request for a mistrial was denied.

On appeal, appellant urges two new grounds in support of his objection to the prosecutor's question which were not raised at trial, that being that the prosecutor's inquiry was one of a question of law which the witness was not qualified to answer and was a direct comment on appellant's right to remain silent during a psychiatric examination. As these two reasons do not comport with appellant's objection at trial, they fail to preserve anything for appellate review. *Crocker v. State,* 573 S.W.2d 190 (Tex.Cr.App.1978); *Watkins v. State,* 572 S.W.2d 339 (Tex.Cr.App.1978).

Appellant does argue that the prosecutor's inquiry of Dickerson was a misstatement of the law. Specifically, appellant alleged at trial that only if the insanity defense is raised would the State be entitled to examine appellant without his consent.

■ We need not examine the contention, for even if it was a misstatement, the instruction to disregard was sufficient to cure any error. *Carrillo v. State,* 591 S.W.2d 876 (Tex.Cr.App.1979); *Yarbrough v. State,* 617 S.W.2d 221 (Tex.Cr.App.1981). Appellant's eleventh ground of error is overruled.

Appellant urges that the evidence is insufficient to support the jury's answer of "yes" to the second special issue submitted under Article 37.071, supra, at the penalty stage of the trial.

■ In answering special issues under Article 37.071, supra, the jury may consider all of the evidence adduced at the guilt stage of a capital murder trial. *Bravo v. State,* 627 S.W.2d 152 (Tex.Cr.App.1982); *Earvin v. State,* 582 S.W.2d 794, 799 (Tex. Cr.App.1979). In fact, circumstances of the offense itself can sustain an affirmative answer to a special issue submitted under Article 37.071, supra. See *Mitchell v. State,* 650 S.W.2d 801 (Tex.Cr.App.1983).

■ The facts elicited at the guilt stage of the trial showed that during the course of the robbery after appellant and his companion had already obtained the money, appellant started to leave, but returned to the counter, leaned over and deliberately shot the deceased who was lying on the floor.

In addition to the testimony adduced at the guilt or innocence stage, the evidence elicited during the punishment stage revealed that appellant had a proclivity for

crime and violence. Appellant had been convicted in Colorado for aggravated robbery and assault in the first-degree. Debbie Archileta, William D. Martin, James Scott and John Parmenter all testified during the punishment stage that appellant had a bad reputation for being a peaceful and law-abiding citizen.

Several victims of prior offenses committed by appellant also testified. Judy Champion testified that she was working at the Avon Beauty Salon in Denver, Colorado in 1974. At that time, she was four months pregnant. Appellant and another man entered the salon. Appellant revealed a gun, pulled the hammer back and made Champion face the wall. He put the gun to her head. He then ripped the telephone line out of the wall and took money from the cash register. While appellant was doing this, Champion heard a gun go off in the rear of the store. She testified that she felt that she was going to die. As appellant and the other man were leaving the store, they threatened to "blow [their] brains out" if they stuck their heads out.

Mable Maynard testified in 1974 that she and her husband were in their photographic studio in Denver. Appellant and another man entered the front of the studio where Mable was. Both men pulled guns and said it was a "stick-up." Appellant pointed the gun at her head. The telephone wire was pulled from the wall by one of the two men. As Mable's husband, George Maynard, who had been in the back portion of the studio, entered the front portion, the other man fired a shot into the floor saying it was a stick-up. George gave the men his billfold containing over $200.00 in response to their demand for money. Then appellant said, "Now you people know us now, so that's that." Appellant then grabbed Mable's hair, put her face to the wall, and his gun to her head. Mable then heard a struggle begin involving her husband. Four shots were fired. Believing that her husband had been killed, Mable ran towards the back of the building. As she ran, they shot at her, and then left the store.

Mable testified that her 70-year-old husband was shot four times. He had four major operations as a result. He lost most of his pancreas, part of his liver and part of his stomach. One bullet remained in his back, causing difficulty in his walk. It could not be removed for fear by the doctors that paralysis would result. George had to take insulin daily as a consequence. Prior to the shooting, he was in perfect health.

George Maynard corroborated his wife's testimony. He testified that in 1974 appellant and another man, Tommy Cook, told him it was a stick-up. George gave them his billfold containing $229.00. Appellant said, "You people know us know, so that's that." Appellant grabbed Mable's hair, turned her head towards the wall and put his gun to her head. At this point, George knew he had to do something so he got up and grabbed appellant, knocking him into the doorway. Appellant shot George in the chest, then lowered his gun and shot George twice in the stomach. As George lay on the floor looking up at appellant, appellant pointed the gun at him again. George moved to the left just as appellant fired, but the bullet hit Maynard's right shoulder and went up his back. The bullet hit where his mouth would have been if he hadn't moved. George saw his wife run to the rear of the store with appellant shooting at her several times.

Dr. E. Clay Griffith, a psychiatrist, testified hypothetically that a person who had committed the acts testified to in this case would be a sociopath personality of the most dangerous type. There would be an absolute probability that he would commit criminal acts in the future and be a continuing threat to society.

Viewing the facts adduced at the guilt or innocence stage and the punishment stage in the light most favorable to the verdict, we conclude that they were more than sufficient to convince a rational trier of facts beyond a reasonable doubt that there was a probability that appellant would commit further criminal acts of violence and that appellant would constitute a continuing

threat to society. Appellant's reliance on *Brasfield v. State*, 600 S.W.2d 288 (Tex.Cr. App.1980), as to the sufficiency of the evidence is readily distinguishable from this case. In *Brasfield v. State*, supra, the State simply failed to present any evidence at the punishment stage. In appellant's case, there is more than sufficient evidence to support the jury's finding on Special Issue Number Two. Appellant's twelfth ground of error is overruled.

■ In appellant's next ground of error, he alleges that the trial court erred in overruling appellant's objection to the hypothetical fact situation proposed to Dr. E. Clay Griffith by the State. Dr. Griffith, who had not personally examined appellant, was given a hypothetical question containing facts elicited during appellant's trial which pertained to appellant in an effort by the State to introduce testimony on special issue number two (potential for future dangerousness). Appellant objected to the posing of a hypothetical question when Griffith had not examined appellant. The trial court overruled the objection.

The question presented to us today is similar to the question presented in *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), wherein the United States Supreme Court rejected the contention that it violates a defendant's due process rights to let a psychiatrist who has not personally examined the defendant to testify to a capital murder defendant's future dangerousness based on hypothetical questions. As the United States Supreme Court stated, "Expert testimony, whether in the form of an opinion based on hypothetical questions or otherwise, is commonly admitted as evidence where it might help the factfinder do its assigned error." *Barefoot v. Estelle*, 463 U.S. at ——, 103 S.Ct. 3399, 77 L.Ed.2d at 1110. Appellant's tenth ground of error is overruled.

■ Next appellant urges that V.T. C.A., Penal Code, § 12.31(a)[11] violates Article VIII of the United States Constitution's

prohibition against cruel and unusual punishment and also Article I, § 13 of the Texas Constitution's prohibition against cruel and unusual punishment. The United States Supreme Court has addressed this issue and declared that the penalty of death does not constitute cruel and unusual punishment in and of itself. *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). In *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the United States Supreme Court rejected the contention that the imposition of the death penalty is cruel and unusual punishment under any circumstances. This court has likewise rejected the same argument. *White v. State*, 629 S.W.2d 701 (Tex.Cr. App.1981). Appellant's fourteenth and fifteenth grounds of error are overruled.

■ In appellant's sixteenth ground of error, he urges that Article 37.071, V.A.C. C.P., which establishes the statutory guidelines under which the death penalty may be imposed, violates the Eighth and Fourteenth Amendments to the United States Constitution. This contention was addressed and rejected by the United States Supreme Court in *Jurek v. Texas*, supra, wherein, the Supreme Court held Article 37.071, V.A.C.C.P., constitutional. Appellant's sixteenth ground of error is overruled.

■ Appellant next argues that Article 37.071, V.A.C.C.P., is unconstitutional because it vests automatic sentencing powers in the trial court. We find no merit in this ground.

First, appellant's contention fails to recognize that Section 12.31(a), V.A.P.C., and Article 37.071, V.A.C.C.P., does not mandate the death penalty upon conviction of capital murder. Rather, the death penalty is imposed under Article 37.071, supra, only upon an affirmative finding by the jury of three special issues after hearing all evidence as to aggravating or mitigating circumstances.

---

**11.** Section 12.31(a), V.A.P.C., states:
"An individual adjudged guilty of a capital felony shall be punished by confinement in the Texas Department of Corrections for life or by death."

Appellant's reliance on *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), is misplaced. The United States Supreme Court in *Woodson v. North Carolina*, supra, decided the same day as *Jurek v. Texas*, supra, held the North Carolina death penalty statute unconstitutional because the death penalty was mandatory upon conviction of first-degree murder; there simply was no procedure by which the jury could hear evidence in mitigation, as there is in Texas, in an effort to individualize the sentence.

Article 37.071, supra, which does not mandate the death penalty upon conviction of capital murder, sets up a procedure where the jury must affirmatively decide three special issues beyond a reasonable doubt before the death penalty is imposed. This procedure has already been determined by the United States Supreme Court to be constitutional. *Jurek v. Texas*, supra. Furthermore, the United States Supreme Court distinguished the Texas statute from the one in North Carolina which was determined to be unconstitutional wherein the Court wrote:

> "North Carolina, unlike Florida, Georgia, and Texas, has thus responded to the *Furman* decision by making death the mandatory sentence for all persons convicted of first-degree murder." *Woodson v. North Carolina*, 428 U.S. at 286–287, 49 L.Ed.2d 950.

Based on the above, we overrule appellant's seventeenth ground of error.

■ In his next ground of error, appellant argues that Article 37.071, V.A.C.C.P., violates the Eighth and Fourteenth Amendments of the United States Constitution by failing to avoid the arbitrary and capricious infliction of the death penalty. In short, appellant contends that a jury could answer yes to the three special issues under Texas' bifurcated trial system based solely on the evidence used to convict appellant at the guilt stage of the trial. We find no merit in appellant's contention.

The Texas death penalty scheme has been upheld by the United States Supreme Court as being one tailored to an individualized sentencing process in a way that obviates standardless discretion on the part of the jury. *Jurek v. Texas*, supra. It has channeled the jury's discretion by providing "clean and objective standards" [*Gregg v. Georgia*, 428 U.S. 153, at 198, 96 S.Ct. 2909, at 2936, 49 L.Ed.2d 859 (1976), quoting *Coley v. State*, 204 S.E.2d 612, 615 (231 Ga. 829 1974)] that provide "specific and detailed guidance." [*Proffitt v. Florida*, 428 U.S. 242 at 253, 96 S.Ct. 2960, at 2967, 49 L.Ed.2d 913 (1976)]. Further, it "make[s] rationally reviewable the process for imposing a sentence of death" [*Woodson v. North Carolina*, 428 U.S. 280, 303, 96 S.Ct. 2978, 2990, 49 L.Ed.2d 944 (opinion of Stewart, Powell and Stevens, JJ.)].

Appellant's reliance on *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), is misplaced. The statute there which was declared unconstitutional allowed "a sentence of death based upon no more than a finding that the offense was 'outrageously or wantonly vile, horrible and inhuman.' There is nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence" [*Godfrey v. Georgia*, 446 U.S. at 429, 100 S.Ct. at 1765]. Texas' system with the three special issues provides such a restraint and a mechanism for appellant review. See *Jurek v. Texas*, supra. Based on the foregoing, we overrule ground of error number eighteen.

■ In appellant's last ground of error, he alleges that Article 37.071, V.A.C.C.P., is unconstitutional in violation of the Eighth and Fourteenth Amendments by being vague and indefinite. However, he cites no authority and presents no argument. Thus, nothing is preserved for appellate review. *Woods v. State*, 569 S.W.2d 901 (Tex.Cr.App.1978).

■ In the interest of justice, however, we address the issue. This Court in *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App.1975), and *Barefoot v. State*, 596 S.W.2d 875 (Tex. Cr.App.1980), rejected the contention that Article 37.071(b) was too vague. Likewise,

the United States Supreme Court rejected the argument in *Jurek v. Texas*, supra, that it was impossible under Special Issue Number Two [Article 37.071(b)(2), V.A.C.C.P.] to predict future behavior and that the question was so vague as to be meaningless. Thus, we overrule appellant's last ground of error.

Finding no reversible error, the judgment is affirmed.

CLINTON and TEAGUE, JJ., dissent to disposition of the *Witherspoon* question concerning venireman Eaker.