CR5-560.dd.li 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00560-CR







Freddie Eric Li, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 45,402, HONORABLE JOE CARROLL, JUDGE PRESIDING







PER CURIAM


 A jury found Freddie Eric Li guilty of capital murder and assessed sentence at life
imprisonment. The murder was a capital offense because it occurred during a robbery. Tex.
Penal Code Ann. §§ 12.31(a) & 19.02(b)(1) (West 1994). The death penalty was barred because
Li was sixteen when the offense occurred. See Tex. Penal Code Ann. § 8.07(d) (West 1994). 
Li was certified to be tried as an adult. Li contends on appeal that the court erred by admitting
crime-scene photographs, allowing hearsay testimony, refusing to declare the capital-murder
punishment statute unconstitutional, and allowing a verdict supported by insufficient evidence to
stand. We will affirm the judgment.

 Troy David Langseth worked as a clerk at the 19th Hole Pawn Shop in Killeen until
he was killed in the store on the morning of October 14, 1994. He was found dead in a pool of blood with his mouth covered by duct tape. He had been stabbed four times, once
piercing his heart and lungs. Seventeen firearms were stolen from the shop.

 Li complains by point of error one that the court admitted photographs of the dead,
bloody Langseth that were duplicative and thus more inflammatory and prejudicial than probative. 
Numerosity is but one of the factors considered in determining whether a jury should view
photographs. Hicks v. State, 860 S.W.2d 419 (Tex. Crim. App. 1993). Other factors include the
gruesomeness, detail, size, and scale of the photographs; whether the photographs are in color;
whether the victim is clothed; whether there is other proof available; and other circumstances
peculiar to the case. Id. at 426. Photographs usually are admissible if testimony regarding the
matters depicted would be admissible. Id. We review their admission on the abuse-of-discretion
standard. See Smith v. State, 683 S.W.2d 393, 402 (Tex. Crim. App. 1984).

 The State introduced four photographs of the victim in a prone position in the office
area; Li objected to one which was a full-frontal view showing the victim's duct-taped mouth,
half-open eyes, and extensive blood flow. The State later introduced six photographs through the
blood-spatter analyst; Li objected that these were merely different angles and magnifications of
the same shot. The court admitted all the photographs. 

 Applying the Hicks test, we do not find reversible error in the admission of these
photographs. The ten photographs of the victim, none of which is larger than 11 X 14 (in the
appellate record), show much blood. The photographs are not excessively gruesome, however,
because a person stabbed through the heart must lose a great deal of blood. The various
photographs show different aspects and magnifications of the crime scene for the probative
purpose of underscoring the intentional nature of the killing. For instance, the shots with the duct
tape corroborate the testimony of one of the accomplice witnesses, while the various angles helped
the analyst form his opinion that the victim was stabbed by a taller man, fell, and was stabbed
again. These matters would be admissible testimony. We find no abuse of discretion in the
admission of the photographs and overrule point one.

 By point of error two, Li contends that the court erred by allowing hearsay
testimony. Generally excluded, hearsay is an out-of-court statement offered to prove the truth of
the matter asserted. Tex. R. Crim. Evid. 801(d). Admissions by party-opponents are not
hearsay. Tex. R. Crim. Evid. 801(e)(2)(A). Statements that tend to subject the speaker to
criminal liability are admissible so long as corroborating circumstances clearly indicate the
trustworthiness of the statement. Tex. R. Crim. Evid. 803(24).

 Statements by a coconspirator made during the course and in furtherance of the
conspiracy also are not hearsay. Tex. R. Crim. Evid. 801(e)(2)(E). The trial court defined a
conspiracy as "any agreement between two or more persons, with intent that a felony be
committed, that they, or one or more of them, engage in conduct that would constitute the offense,
and one or more of them performs an overt act in pursuance of the agreement." The
coconspirator exception is not limited to prosecutions for conspiracy. Canaday v. State, 853
S.W.2d 810, 813-14 (Tex. App.--Beaumont 1993, no pet.). The existence of a conspiracy must
be proved by a preponderance of the evidence. Callaway v. State, 818 S.W.2d 816, 831 (Tex.
App.--Amarillo 1991, pet. denied). Every qualifying declaration of a coconspirator is admissible
even though it occurred outside the hearing of the defendant. Id. A conspiracy includes
everything contemplated by the conspirators and terminates only after the performance of every
act subsequent to the commission of the offense within the plan and breadth of the conspiracy. 
Id. This hearsay exclusion clearly applies to this case because the uncontroverted evidence
showed that Li agreed with Ben Mullins, Daniel Park, and Jason Robinson to rob the pawn shop;
he also planned with Park and Robinson to murder the clerk. The court's instructions listed Park,
Mullins, and Ricky Lomba as accomplice witnesses (Robinson did not testify in this trial).

 We review the admission of hearsay for abuse of discretion. Coffin v. State, 885
S.W.2d 140, 149 (Tex. Crim. App. 1994). If we find error, we must reverse unless we find
beyond a reasonable doubt that the error did not contribute to the conviction. Tex. R. App. P.
81(b)(2). Admission of hearsay over objection is harmless if the same evidence is otherwise
admitted without objection. Macias v. State, 776 S.W.2d 255, 259 (Tex. App.--San Antonio 1995,
pet. ref'd) (citing Mutscher v. State, 514 S.W.2d 905, 919 (Tex. Crim. App. 1974)).

 Li complains about Park's testimony that Mullins, while discussing the plot, said
that Park could drive the car while Mullins and Robinson robbed the pawnshop. This statement
in no way implicated Li; if anything, it tended to exculpate him. Its admission could not have
contributed to his conviction. Further, Park's later testimony mooted any error in the admission
of this statement; Park testified without objection that Li told him that Li had replaced Mullins
in the plan to bind and murder the clerk, take the guns, and leave.

 Park testified without objection on many subjects that diminished the impact of any
errors in admitting other witnesses' hearsay testimony. He testified that Li said he wanted to
plunge the knife through someone's skull. Park testified that Li took a knife to the pawnshop. 
Park and Robinson did a scouting mission on October 12 and reported to Li, but the shop was too
busy that day. On October 14, Park drove Li and Robinson to the pawn shop. Li and Robinson
went into the pawn shop and emerged with guns in their duffel bag. Li apologized for upsetting
Robinson by making him pull the knife out of Langseth's body. Park helped Li unload the guns
into Li's attic. Park testified that he and Li burned the surveillance tape and other evidence
(including Li's Georgetown Hoyas cap) and threw the knife into a lake. Park later led peace
officers to the knife.

 Li complains about testimony from Joseph Lomba and Justin Luevano. He
complains that Joseph testified over objection that he overheard Robinson say to Rick Lomba that
Li, Park, and Robinson planned to rob a pawn shop instead of a trailer park as earlier planned. 
Li complains of the admission over his objection of testimony by Justin Luevano that Robinson
told him shortly after the robbery that Li and Robinson had robbed the pawn shop. Any error in
the admission of either testimony was rendered harmless by the previous admission of Park's
similar testimony regarding Li's involvement in the planning and execution of the robbery and
murder.

 Li complains about the allowance of Mullins's testimony about conversations he
had with Robinson while Li was present, as well as about conversations he overheard between
Robinson and Li. Mullins testified that, in Li's presence, he and Robinson outlined the original
plan (which included only knocking the clerk unconscious); he testified over objection that Li
approved the plan. Mullins testified that he drove with Robinson and Li to the pawnshop to look
it over in preparation for the robbery; he testified over objection that Li and Robinson were
talking about details of the plan. These statements were all clearly among coconspirators during
and in furtherance of the conspiracy; they were thus not hearsay and were admissible. Mullins
also testified over objection that, after the robbery, Robinson bragged about having stabbed the
clerk and that Li said, "Slim's the man." ("Slim" was Robinson's nickname.) While these
statements did not further the conspiracy, they did not harm Li; if anything, they tended to
exculpate him of stabbing Langseth. Because we find that the statements of which Li complains
were cumulative, not hearsay, or otherwise not harmful, we overrule point two.

 Li contends by point four that insufficient evidence supported his conviction. In
determining the legal sufficiency of the evidence to support a conviction, the question is whether,
viewing all the evidence most favorably to the verdict, any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991); Griffin v. State, 614
S.W.2d 155 (Tex. Crim. App. 1981). In determining the factual sufficiency, we consider all the
testimony and evidence and can set aside a verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996). The jury is the exclusive judge of the credibility of the witnesses and
of the weight to be given their testimony; the jury may accept or reject all or any part of the
evidence. Miller v. State, 909 S.W.2d 586, 593 (Tex. App.--Austin 1995, no pet.). The jury may
make reasonable inferences and deductions from the evidence. Id.

 We assess the sufficiency of the evidence against the jury charge. Garrett v. State,
749 S.W.2d 784, 802-03 (Tex. Crim. App. 1986). The court instructed the jury that a person
commits capital murder if he commits murder in the course of committing or attempting to commit
robbery. (1) The court also instructed the jury on the law of parties, criminal responsibility, and
conspiracy. (2) The court also cautioned the jury that they could not convict based on the testimony
of accomplices Park, Mullins, and Ricky Lomba unless that testimony was corroborated by
evidence tending to connect Li with the commission of the offense. The court further cautioned
that the testimony of one accomplice witness cannot serve to corroborate another's. The court
charged the jury to find Li guilty of capital murder if it found beyond a reasonable doubt that Li,
"either acting alone or with another or others as a party to the offense, as that term has been
previously defined, in the course of attempting to commit or committing robbery, intentionally
cause[d] the death of an individual, Troy David Langseth, by stabbing him with a knife . . . ."

 The accomplice witnesses provided much damaging testimony. Park's testimony
alone proved guilt. He said the boys, including Li, planned to rob the pawn shop of guns and kill
the clerk in the process. He said they accomplished their goals. Mullins and Ricky Lomba each
testified that Li told them that he killed the clerk.

 Their testimony is corroborated. The clerk was stabbed to death by a taller
assailant and firearms were missing. Li's statement, a police search, and non-accomplice Joseph
Lomba's testimony showed that Li possessed and distributed the stolen firearms. The charred
remains of a Georgetown Hoyas cap was found with a melted plastic glob that might have been
a videotape. Robinson's telephone call to "Fred" upon his arrest, confirmed by a non-accomplice,
links Li to the robbery. Even if this evidence were not enough evidence to mark him as the knife-wielder, it is enough to corroborate his role as a party to the robbery-murder.

 Not much evidence points away from Li. Earlier versions of the plot did not
involve him. He told police that he slept the whole morning of the murder. Robinson bragged
that he, not Li, killed Langseth and Li said Robinson was "the man." This evidence does not
persuade us that no rational jury could have found him guilty or that the guilty finding was against
the great weight and preponderance of the evidence. We find legally and factually sufficient
evidence to support the conviction. We overrule point four.

 By point three, Li contends that the trial court should have declared Penal Code
Ann. section 12.31(a), the capital murder sentencing statute, violative of the due course of law
clause of the Texas Constitution. The State cannot seek the death penalty for a capital murder
committed by someone younger than seventeen years of age. See Tex. Penal Code Ann. § 8.07(d)
(West 1994). The only possible punishment is life imprisonment. Tex. Penal Code Ann. §
12.31(a) (West 1994). The court therefore assessed the sentence upon the guilty verdict without
hearing evidence. Li contends he thus was deprived of his right to produce evidence in his favor
(see Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.05 (West 1977)) and therefore
was denied the due course of the law (see Tex. Const. art. I, § 13).

 We disagree with Li's inherent premise that there is a constitutional right to a
sentencing range for each offense. Even if such a right existed, capital felonies have a range of
punishment, albeit limited to life imprisonment or death. Tex. Penal Code Ann. § 12.31 (West
1994). The prohibition of the death penalty for capital crimes committed by juveniles simply
granted Li all the mitigation that juvenile capital felons are entitled to receive without going to the
time and expense of presenting evidence. The legislature, rather than the trial court, considered
his youth and determined that he deserved not to face the death penalty. He was not deprived of
the right to present evidence to mitigate his punishment, merely of the need to present it. That
his punishment was a mandatory life sentence does not necessarily render it unconstitutional. See
Rummel v. Estelle, 445 U.S. 263 (1980) (mandatory life sentence for recidivist felons not cruel
and unusual punishment). We find no error and overrule point three.

 We affirm the judgment.


Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: September 11, 1996

Do Not Publish
1.   The court instructed the jury that a person commits


 a) murder if he intentionally or knowingly causes the death of an
individual.

 b) robbery if, in the course of committing theft and with intent to
obtain or maintain control of property, a person 1) intentionally or knowingly
threatens or places another in fear of imminent bodily injury or death, or 2)
intentionally or knowingly threatens or places another in fear of imminent
bodily injury or death.

 c) theft if he appropriates property without the owner's effective
consent and with the intent to deprive the owner of property.
2.   The court instructed that a person is criminally responsible 


 a) for causing a result if the only difference between what actually
occurred and what he desired was that a different offense was committed or a
different person or property was injured, harmed or otherwise affected.

 b) for another's offense if, acting with intent to promote or assist the
commission of the offense, he solicits, encourages, directs, aids, or attempts
to aid the other to commit the offense.

 A person is criminally responsible as a party to an offense if the
offense is committed by his conduct, by the conduct of another for which he
is criminally responsible, or by both.

 If, in the attempt to carry out a conspiracy to commit one felony,
another felony is committed by one of the conspirators, all conspirators are
guilty of the felony actually committed, though having no intent to commit it,
if the offense was committed in furtherance of the unlawful purpose and was
one that should have been anticipated as a result of the carrying out of the
conspiracy.



could have found him guilty or that the guilty finding was against
the great weight and preponderance of the evidence. We find legally and factually sufficient
evidence to support the conviction. We overrule point four.

 By point three, Li contends that the trial court should have declared Penal Code
Ann. section 12.31(a), the capital murder sentencing statute, violative of the due course of law
clause of the Texas Constitution. The State cannot seek the death penalty for a capital murder
committed by someone younger than seventeen years of age. See Tex. Penal Code Ann. § 8.07(d)
(West 1994). The only possible punishment is life imprisonment. Tex. Penal Code Ann. §
12.31(a) (West 1994). The court therefore assessed the sentence upon the guilty verdict without
hearing evidence. Li contends he thus was deprived of his right to produce evidence in his favor
(see Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.05 (West 1977)) and therefore
was denied the due course of the law (see Tex. Const. art. I, § 13).

 We disagree with Li's inherent premise that there is a constitutional right to a
sentencing range for each offense. Even if such a right existed, capital felonies have a range of
punishment, albeit limited to life imprisonment or death. Tex. Penal Code Ann. § 12.31 (West
1994). The prohibition of the death penalty for capital crimes committed by juveniles simply
granted Li all the mitigation that juvenile capital felons are entitled to receive without going to the
time and expense of presenting evidence. The legislature, rather than the trial court, considered
his youth and determined that he deserved not to face the death penalty. He was not deprived of
the right to present evidence to mitigate his punishment, merely of the need to present it. That
his punishment was a mandatory life sentence does not necessarily render it unconstitutional. See
Rummel v. Estelle, 445 U.S. 263 (1980) (mandatory life sentence for recidivist felons not cruel
and unusual punishment). We find no error and overrule point three.

 We affirm the judgment.


Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: September 11, 1996

Do Not Publish
1.   The court instructed the jury that a person commits


 a) murder if he intentionally or knowingly causes the death of an
individual.

 b) robbery if, in the course of committing theft and with intent to
obtain or maintain control of property, a person 1) intentionally or knowingly
threatens or places another in fear of imminent bodily injury or death, or 2)
intentionally or knowingly threatens or places another in fear of imminent
bodily injury or death.

 c) theft if he appropriates property without the owner's effective
consent and with the intent to deprive the owner of property.
2.   The court instructed that a person is criminally responsible 


 a) for causing a result if the only difference between what actually
occurred and what he desired was that a different offense was committed or a
different person or property was injured, harmed or otherwise affected.

 b) for another's offense if, acting with intent to promote or assist the
commission of the offense, he solicits, encourages, directs, aids, or attempts
to aid the other to commit the offense.

 A person is criminally responsible as a party to an offense if the
offense is committed by his conduct, by the conduct of another for which he
is criminally responsible, or by both.