PD-0955-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/30/2015 12:32:27 PM
Accepted 7/30/2015 4:00:52 PM
ABEL ACOSTA
CLERK

PD-0955-15

No. _____

To the Court of Criminal Appeals of Texas

**The State of Texas,**
Petitioner

v.

**Ross Allen Hartwell,**
Respondent

From the Court of Appeals for the
Thirteenth Judicial District of Texas at Corpus Christi
Court of Appeals No. 13-14-00087-CR

Appeal from the 390th Judicial District Court
Travis County, Texas
Cause Number D-1-DC-13-904031

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

**Rosemary Lehmberg**
District Attorney
Travis County

**Angie Creasy**
Assistant District Attorney
State Bar No. 24043613
P.O. Box 1748
Austin, Texas 78767
(512) 854-9400
Fax (512) 854-4810
Angie.Creasy@traviscountytx.gov
AppellateTCDA@traviscountytx.gov

FILED IN
COURT OF CRIMINAL APPEALS

July 30, 2015

ABEL ACOSTA, CLERK

*Oral argument is requested*

# Identity of Parties and Counsel

| | |
|---|---|
| Trial Judges: | **Bob Perkins, visiting, and Julie Kocurek** |
| | 390th Judicial District Court |
| | P.O. Box 1748 |
| | Austin, Texas 78767 |
| | |
| Appellate Counsel for State: | **Angie Creasy** |
| | Travis County District Attorney's Office |
| | P.O. Box 1748 |
| | Austin, Texas 78767 |
| | |
| Trial Counsel for State: | **Katie Sweeten and Steven Brand** |
| | Travis County District Attorney's Office |
| | P.O. Box 1748 |
| | Austin, Texas 78767 |
| | |
| Defendant: | **Ross Allen Hartwell** |
| | |
| Appellate Counsel for Defendant: | **Paul M. Evans** |
| | 811 Nueces St. |
| | Austin, Texas 78701 |
| | |
| Trial Counsel for Defendant: | **Alexandra Gauthier and Kathryn Rooth Salzer** |
| | 505 W. 12th St., Suite 204 |
| | Austin, Texas 78701 |

# Table of Contents

Identity of Parties and Counsel ............................................................. i

Index of Authorities.......................................................................... iii

Statement Regarding Oral Argument................................................ iv

Statement of the Case ...................................................................... iv

Statement of Procedural History...................................................... iv

Ground for Review............................................................................v

   Must the evidence at trial affirmatively show that prior convictions,
   used to enhance punishment under Tex. Penal Code § 12.42(d), are
   not state jail felonies punishable under Tex. Penal Code § 12.35(a)?v

Argument.......................................................................................... 2

Prayer .............................................................................................. 4

Certificate of Compliance and Service.............................................. 5

Appendix: Opinion of the Court of Appeals

# Index of Authorities

**Cases**

*Hartwell v. State*, No. 13-14-00087-CR, 2015 Tex. App. LEXIS 6758
(Tex. App. – Corpus Christi July 2, 2015) ....................................... iv

**Statutes**

Tex. Penal Code § 12.35 ................................................................. 3
Tex. Penal Code § 12.42 ................................................................. 2

## Statement Regarding Oral Argument

The State respectfully requests oral argument because this issue requires examination of multiple statutes, the evidence, and the court's charge.

## Statement of the Case

A jury convicted Hartwell of aggravated robbery with a deadly weapon finding. The jury found two enhancement allegations to be true and assessed punishment at 70 years.

## Statement of Procedural History

On July 2, 2015, the Thirteenth Court of Appeals issued a published opinion affirming the conviction but reversing and remanding for a new trial on punishment. *See Hartwell v. State*, No. 13-14-00087-CR, 2015 Tex. App. LEXIS 6758 (Tex. App. – Corpus Christi July 2, 2015). The defendant filed a *pro se* motion for rehearing on July 20, 2015. The court of appeals has not ruled on the motion.

## Ground for Review

Must the evidence at trial affirmatively show that prior convictions, used to enhance punishment under Tex. Penal Code § 12.42(d), are not state jail felonies punishable under Tex. Penal Code § 12.35(a)?

**No. _____**

To the Court of Criminal Appeals of Texas

**The State of Texas,**
Petitioner

v.

**Ross Allen Hartwell,**
Respondent

From the Court of Appeals for the
Thirteenth Judicial District of Texas at Corpus Christi
Court of Appeals No. 13-14-00087-CR

Appeal from the 390th Judicial District Court
Travis County, Texas
Cause Number D-1-DC-13-904031

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

To the Honorable Court of Criminal Appeals:

Now comes the State of Texas and files this petition, and in

support thereof, respectfully shows the following:

## Argument

The State enhanced the range of punishment in this case with prior felony convictions, pursuant to Section 12.42 of the Penal Code:

> If it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years. **A previous conviction for a state jail felony punishable under Section 12.35(a) may not be used for enhancement purposes under this subsection.**

*See* Tex. Penal Code § 12.42(d), emphasis added.

One of the priors used to enhance punishment was a state jail felony conviction for unauthorized use of a motor vehicle. The record does not show whether this prior conviction was a state jail felony punishable under Section 12.35(a) or a state jail felony punishable under Section 12.35(c). *See* SX 301 at 14RR 192.

The defendant made no objection or complaint at trial about the use of this prior conviction to enhance punishment. But on appeal, the defendant argued that the evidence was insufficient to support

2

enhancement because the evidence did not affirmatively show that this prior conviction was not a state jail felony punishable under Section 12.35(a).

The State contended that the evidence does not have to affirmatively show that the prior conviction is not a state jail felony punishable under Section 12.35(a). The State argued that this is not a question of fact for the jury but rather a question of law for the judge to decide when submitting the punishment charge to the jury. Because it is a jury charge issue, the burden is on the defendant to show that the judge erred. Since the record does not clearly show error, the punishment should be upheld on appeal.

The court of appeals agreed with the defendant, however, and held that the evidence of enhancement was legally insufficient. The court reversed and remanded for a new punishment trial. *See* Appendix pp 22-25.

The State asks this court to grant discretionary review because this is an important question of law that has not been settled by the Court of Criminal Appeals.

3

## Prayer

The State asks this Court to grant discretionary review of this petition.

Respectfully submitted,

**Rosemary Lehmberg**
District Attorney
Travis County


**Angie Creasy**
Assistant District Attorney
State Bar No. 24043613
P.O. Box 1748
Austin, Texas 78767
(512) 854-9400
Fax (512) 854-4810
Angie.Creasy@traviscountytx.gov
AppellateTCDA@traviscountytx.gov

4

## Certificate of Compliance and Service

I hereby certify that this petition contains 442 words. I further certify that, on the 30th day of July, 2015, a copy of this petition was served, by U.S. mail, electronic mail, facsimile, or electronically through the electronic filing manager, to:

Paul M. Evans
Attorney for the Defendant
811 Nueces Street, Austin, Texas 78701

Lisa McMinn
State Prosecuting Attorney
P.O. Box 13046
Austin, Texas 78711-3046

**Angie Creasy**

# APPENDIX

# Opinion of the Court of Appeals



## NUMBER 13-14-00087-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

ROSS ALLEN HARTWELL,                                          Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

---

### On appeal from the 390th District Court
### of Travis County, Texas.

---

## OPINION

### Before Justices Rodriguez, Garza, and Longoria
### Opinion by Justice Rodriguez

Appellant Ross Allen Hartwell appeals from a judgment rendered by the 390th District Court of Travis County, Texas.[1] A jury found Hartwell guilty of aggravated robbery with an affirmative deadly weapon finding. *See* TEX. PENAL CODE ANN. § 29.03

---

[1] This case is before the Court on transfer from the Third Court of Appeals in Austin pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.).

(West, Westlaw through 2015 R.S.). The jury found two enhancement paragraphs to be true and assessed punishment of seventy years' imprisonment. Hartwell raises ten issues on appeal. We affirm in part and reverse and remand in part.

## I. BACKGROUND

Christina Morman, the complainant, testified at trial that on March 26, 2012, she was working the night shift at a Popeye's restaurant in Austin, Texas. She finished her shift at 11 p.m. and was in the process of leaving the Popeye's premises when she realized that she forgot her cigarette lighter. She parked her van near the front entrance of the restaurant, left her engine running, and went back inside to get her lighter. Upon returning to her vehicle she saw a person in the front passenger seat of her van. Morman ran to her van, put her hand on the door, and said "[h]ey, this is my car." The driver then reversed out of the parking space in such a way that the front end of the vehicle struck Morman and knocked her to the ground. The driver paused for a few seconds before running Morman over. Morman was dragged underneath the vehicle for approximately 246 feet before being dislodged. Co-worker Alexis Blount witnessed the event and corroborated Morman's testimony at trial.

Co-defendant Joshua Voigt testified that he was with Hartwell when they stole Morman's vehicle: Voight was in the passenger seat, and Hartwell was in the driver's seat. Voight saw Morman run to the van and testified that she tried to open the rear passenger sliding door. He heard her "cuss", "yell at [them] to stop", and say, "[h]ey, this is my car." When Hartwell reversed the vehicle and knocked Morman to the ground, Voigt saw Morman lying on the ground in front of the vehicle. When Hartwell put the vehicle in drive and ran over Morman, Voigt testified that he heard a thump and felt the

2

wheels go over Morman's body. He also testified that he could hear Morman screaming.

Detective Steve Boline with the Austin Police Department interviewed Hartwell that same day. The trial court admitted a redacted video of the custodial interview into evidence. The recording showed that Hartwell initially denied any involvement but later admitted to stealing Morman's vehicle. Hartwell admitted that he was the driver and that he put the van in reverse and backed out of the parking space. Hartwell claimed he decided to abandon the robbery upon seeing people running towards him after he reversed out of the parking space. He claimed Voigt reached over and grabbed the door, preventing him from exiting the vehicle. Hartwell also claimed that he was pressing on the brake, but Voigt reached down and depressed the gas pedal with his hand. Hartwell admitted during the interview that he saw someone in front of the vehicle but denied knowledge that he ran over anyone.

The jury found Hartwell guilty of aggravated robbery with an affirmative deadly weapon finding. *See id.* Hartwell elected to have the jury decide punishment and entered a plea of "not true" to the enhancement allegations put forth by the State. The jury found two enhancement paragraphs to be true and assessed a term of seventy years' imprisonment, and the trial court sentenced Hartwell accordingly. This appeal followed.

## II.    FIFTH AMENDMENT RIGHT TO COUNSEL

By his first issue, Hartwell contends that he invoked his right to counsel during his custodial interview and that any statements made after he invoked his right to counsel were inadmissible.

### A.    Standard of Review & Applicable Law

In reviewing claims concerning the admission of statements made as the result of

3

custodial interrogation, we conduct the bifurcated review articulated in *Guzman v. State.* *See Pecina v. State,* 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012) (citing *Guzman,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We afford almost total deference to the trial court's rulings on questions of fact and on questions involving the application of law to fact that turn upon a witness' credibility and demeanor.[2] *Id.* at 79. We review de novo the trial court's rulings on questions involving the application of law to facts that do not turn upon a witness' credibility and demeanor. *Id.* However, as the *Pecina* Court explained, in deciding whether an accused has "actually invoked his right to counsel," the Supreme Court has dictated that we use an objective standard "to avoid difficulties of proof and to provide guidance to officers conducting interrogations." *Id.* (citing *Davis v. United States,* 512 U.S. 452, 458–59 (1994)).

When a defendant asks for a lawyer, questioning must cease until counsel has been provided or the defendant initiates further communication with the police. *Edwards v. Arizona,* 451 U.S. 477, 484–85 (1981). Once a suspect has invoked his right to counsel, no subsequent exchange initiated by the police can serve to undermine the clarity of the invocation. *State v. Gobert,* 275 S.W.3d 888, 894–95 (Tex. Crim. App. 2009).

However, before a duty to terminate an interrogation arises, a defendant's request for counsel must be clear—the police are not required to attempt to clarify ambiguous or equivocal remarks. *Davis v. United States,* 512 U.S. 452, 461–62 (1994); *Pecina,* 361 S.W.3d at 79. The accused must unambiguously request counsel during a custodial

---

[2] Because the trial court did not enter findings of fact, we will imply necessary findings in support of the ruling if they are supported by the evidence. *See, e.g., State v. Kelly,* 204 S.W.3d 808, 819 (Tex. Crim. App. 2006).

4

interrogation. *Pecina,* 361 S.W.3d at 79. To unambiguously request counsel, the accused "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis,* 512 U.S. at 459. "A statement either is such an assertion of the right to counsel or it is not." *Id.* We view the totality of circumstances from the viewpoint of the objectively reasonable police officer conducting a custodial interrogation. *Id.* at 458–59; *Pecina,* 361 S.W.3d at 79.

## B.    Discussion

Detective Boline interviewed Hartwell after he was arrested for the instant offense. Hartwell waived his *Miranda* rights[3] and agreed to speak with Detective Boline. Though Hartwell initially denied any knowledge of the incident, the following exchange occurred during the interrogation:

Hartwell:    Okay. What—what would you do—I know it's hard for you to put yourself in this situation but—

Det. Boline:  Try me.

Hartwell:    Should I—should I call that attorney friend of mine to see what he thinks?

Det. Boline:  That's a decision you have to make. I mean, I can't—I can't answer that for you.

Hartwell:    I mean, even in most (inaudible) anybody's willing to—I mean, I'd be willing to let anybody in also with—with— with me and my lawyer or—or me—he's not my lawyer, he's just a friend of my attorney but—

Det. Boline:  Let me ask you this, was he there?

Hartwell:    My attorney?

---

[3] *See Miranda v. Arizona,* 384 U.S. 436, 444 (1966).

Det. Boline:  Yeah, was he there that night?

Hartwell:  No.

Det. Boline:  So what is he going to be able—I mean, this is your call. I'm not gonna try and talk you out of one way or another; if you want to call him, that's fine, but you and I will not be able to talk again and—and I'm—and this is—this is—

Hartwell:  See that's what I mean. I mean you're nice and—and—

Det. Boline:  No, no, no, no.

Hartwell:  —you're great but—

Det. Boline:  They're not gonna let me talk to you. Would I want to come down—I can come down and visit with you but I'm not gonna be able to help you try and help yourself. Does that make sense? This is weighing—this is weighing heavy on you. It's not gonna go away. The only thing you can do at this point is to try and help yourself out, and by—by that, I mean explaining your side of it.

Hartwell continued to talk to Detective Boline and went on to admit his involvement in stealing Morman's vehicle. He also wrote two statements regarding the events of the night in question—those statements, along with a redacted version of his oral interview—were admitted into evidence at trial.

We must initially determine whether Hartwell's statements to Detective Boline constituted an unambiguous invocation of his right to counsel. *See Pecina,* 361 S.W.3d at 79. The Supreme Court in *Davis* found Davis's statement that "maybe [he] should talk to a lawyer" was not a request for counsel. 512 U.S. at 461–62. The Court stated it was "unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect *might* want a lawyer." *Id.* at 462. The court of criminal appeals has also determined that a suspect's statement that he "should have an attorney" was not a clear request for counsel. *See Davis v. State,* 313 S.W.3d 317, 341 (Tex. Crim. App. 2010).

6

In deciding that the above statement was not an unequivocal request for counsel the court of criminal appeals determined "appellant's statement was not in the form of a request nor did appellant expressly say that he wanted a lawyer." *Id.*

Hartwell agrees that his question to Detective Boline, "should I maybe call my attorney friend and see what he thinks," was not an unequivocal and unambiguous request for counsel. However, Hartwell contends that his question regarding counsel, considered in context with the remainder of the conversation, was an affirmative invocation of his right to counsel. Yet the conversation that followed Hartwell's question regarding an attorney created even more ambiguity because Hartwell then stated that it was not even his attorney, just "a friend of [his] attorney."

The trial court correctly noted that Hartwell has no constitutional right to talk to a friend of his attorney and ruled that either there was no invocation of counsel or, in the alternative, that it was equivocal. We agree with the trial court's ruling. Hartwell's comment was similar to the comment in *Davis v. State* in that Hartwell used the word "should." *See id.* Hartwell recognized that having an attorney was an option, but did not actually make a request for an attorney to be present. *See id.* Hartwell did not unequivocally request an attorney such that an objectively reasonable police officer would understand that he had invoked his fifth-amendment right to counsel. *See Pecina,* 361 S.W.3d at 79. The trial court did not err in admitting Hartwell's oral and written statements into evidence at trial.

We overrule Hartwell's first issue.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

By Hartwell's second issue, he contends that he was not afforded effective

7

assistance of counsel because of an alleged error during jury selection. Specifically, he contends that his trial counsel failed to challenge for cause or request a peremptory strike to remove a venireman who had affirmatively stated he could not remain objective if shown graphic evidence.

### A. Standard of Review & Applicable Law

Both the Federal and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.051 (West, Westlaw through 2015 R.S.). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense.[4] *Id.*; *Wert v. State,* 383 S.W.3d 747, 752 (Tex. Crim. App. 2012). Failure to satisfy either prong defeats an ineffective assistance claim. *Strickland,* 466 U.S. at 697. In applying the *Strickland* test we consider the totality of the representation and the particular circumstances of the case to determine whether counsel was ineffective. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

To satisfy *Strickland'*s first prong, the appellant must identify acts or omissions of counsel that allegedly were not the result of reasonable judgment. *Strickland,* 466 U.S. at 690. A defendant must overcome the strong presumption that trial counsel's actions fell within the wide range of reasonable and professional assistance. *Garza v. State*, 213

---

[4] Texas adopted the *Strickland* test in *Hernandez v. State. See* 726 S.W.2d 53 (Tex. Crim. App. 1986) (en banc).

S.W.3d 338, 347–48 (Tex. Crim. App. 2007); *see also Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc). If the reasons for counsel's conduct at trial do not appear in the record and it is possible that the conduct could have been grounded in legitimate trial strategy, an appellate court will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal. *Garza,* 213 S.W.3d at 348; *see also Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (holding that "[a]n ineffective-assistance claim must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim."). Direct appeal is usually an inadequate vehicle for raising such a claim. *Menefield,* 363 S.W.3d at 592–93.

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *Wert,* 383 S.W.3d at 753. Finally, "[i]t is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Id.* Instead, to establish that the attorney's acts or omissions were outside the range of professionally competent assistance, appellant must show that counsel's errors were so serious that he was essentially not functioning as counsel. *Id.* (citing *Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995) (en banc)). "To warrant reversal when trial counsel has not been afforded an opportunity to explain his reasons, the challenged conduct must be so outrageous that no competent attorney

9

would have engaged in it." *Roberts v. State*, 220 S.W.3d 521, 533–34 (Tex. Crim. App. 2007).

To satisfy *Strickland's* second prong, the appellant must establish a reasonable probability that, but for counsel's errors, the result would have been different. *Strickland,* 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Thompson v. State,* 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

## B.    Discussion

Hartwell contends that trial counsel's failure to strike Mr. Rodriguez, venireman number two, caused him to receive ineffective assistance of counsel. In response to a question asked regarding his ability to maintain objectivity in light of graphic photographic evidence, Rodriguez stated that he could get "easily overwhelmed" which could "prevent [him] from being objective . . . cloud [his] judgment and maybe distract [him.]" Rodriguez was neither challenged for cause nor peremptorily stricken. Instead, Rodriguez was empanelled on the jury that subsequently found Hartwell guilty. Other veniremen also testified that graphic photographs would be problematic for them and were successfully challenged for cause by trial counsel.

Hartwell's appellate counsel filed a motion for new trial in the trial court. In that motion Hartwell raised ineffective assistance of counsel as a basis for a new trial. His motion did not, however, create a record regarding trial counsel's reasons for not striking Rodriguez or whether trial counsel's failure to strike Rodriguez was a part of her trial strategy. Hartwell's motion for new trial did not brief the ineffective assistance of counsel claim or provide any facts supporting his contention.

10

The reasons for trial counsel's conduct do not appear in the record, and it is possible that her conduct could have been grounded in legitimate trial strategy. *See Garza,* 213 S.W.3d at 348; *see also Menefield*, 363 S.W.3d at 593. For example, Hartwell's trial counsel could have observed Rodriguez's facial expressions and attitude during voir dire and determined he was an acceptable juror. Without the benefit of a record, we cannot know the reasons behind counsel's actions and the record does not affirmatively demonstrate that Hartwell's claim is meritorious. *See Menefield*, 363 S.W.3d at 593; *Garza,* 213 S.W.3d at 347–48. Hartwell did not meet *Strickland's* first prong so we will defer to counsel's decisions and deny relief on Hartwell's ineffective assistance claim. [5] *See Garza,* 213 S.W.3d at 348; *see also Menefield*, 363 S.W.3d at 593.

We overrule Hartwell's second issue.

### IV. ADMISSION OF EVIDENCE

By his third, fourth, fifth, and sixth issues, Hartwell challenges the admission of evidence before the jury. Hartwell contends by his third issue that the trial court abused its discretion when it admitted a dash-cam video containing hearsay statements before the jury. By his fourth issue, Hartwell contends the trial court erred in allowing "victim impact" testimony before the jury during the guilt-innocence phase of trial. Finally, by his fifth and sixth issues, Hartwell challenges the trial court's admission of lay-opinion testimony by the complainant and a witness to the accident.

### A. Standard of Review

---

[5] A proper record is best developed in a habeas corpus proceeding or in a motion for new trial hearing. *Jensen v. State*, 66 S.W.3d 528, 542 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

11

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Sandoval v. State,* 409 S.W.3d 259, 281 (Tex. App.—Austin 2013, no pet.). A trial court abuses its discretion only if its decision "lies outside the zone of reasonable disagreement." *Tillman,* 354 S.W.3d at 435; *Sandoval,* 409 S.W.3d at 281.

## B.     Admission of Alleged Hearsay Statement

Hartwell contends that the trial court erred when it admitted the dash-cam video recording taken at the scene of the crime. The video contained a portion of the first responding officer's in-car video. Hartwell moved to suppress the evidence, arguing that the video was not relevant and in the alternative that if it was relevant, it was highly prejudicial. The trial court determined that the video was relevant and, after applying the balancing test pursuant to rule 403, overruled Hartwell's objections and admitted the evidence. *See* TEX. R. EVID. 403.

On appeal, Hartwell contends that the audio contained hearsay statements, including remarks such as "I guess you got hit when someone tried to take her car away from her," and "someone tried to take her car and ran back over her and took her car." The State noted that Hartwell failed to object to the video on hearsay grounds.

Preservation of error is a systemic requirement on appeal. *Blackshear v. State*, 385 S.W.3d 589, 590 (Tex. Crim. App. 2012). We will not address the merits of an issue that has not been preserved for appeal. *Id.* at 591. To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context. TEX. R. APP. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex.

12

Crim. App. 2012). At trial, before the State offered the dash-cam video recording, Hartwell's counsel moved to suppress the video on the basis it was irrelevant and unfairly prejudicial pursuant to Texas Rules of Evidence 401 and 403, respectively. *See* TEX. R. EVID. 401, 403. The trial court overruled both objections. Hartwell did not object on the basis of hearsay. "Grounds of error urged on appeal must comport with objections made at trial or the error is not preserved." *Denison v. State,* 651 S.W.2d 754, 762 (Tex. Crim. App. 1983) (en banc). Consequently, Hartwell's complaint about alleged hearsay statements in the dash-cam recording was not preserved for appellate review. *See* TEX. R. APP. P. 33.1.

We overrule Hartwell's third issue.

### C. "Victim Impact" Testimony

Hartwell contends that the State improperly elicited "victim impact" testimony in the guilt-innocence phase of the trial when the prosecutor asked Morman whether her children were able to recognize her at the hospital. Hartwell objected to the question on the basis that it was "impermissible" and that it constituted "victim impact" evidence. The trial court overruled his objection, and Morman testified that her children did not recognize her when they first saw her at the hospital.

Victim-impact evidence is evidence concerning the effect of the crime on the victim and the victim's family after the crime occurs. *Reynolds v. State,* 371 S.W.3d 511, 525 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd)*; see Haley v. State,* 173 S.W.3d 510, 517 (Tex. Crim. App. 2005) ("Victim-impact evidence is evidence concerning the effect the victim's death will have on others, particularly the victim's family members. . . ."). "Victim impact testimony is irrelevant at the guilt-innocence phase of a trial because it

13

does not tend to make more or less probable the existence of any fact of consequence with respect to guilt or innocence." *Reynolds,* 371 S.W.3d at 525 (quoting *Love v. State*, 199 S.W.3d 447 456–57 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd)).

We must initially determine whether Morman's testimony that her children did not recognize her at the hospital was merely "victim impact" testimony. Upon Hartwell's objection, the trial court asked the State its purpose for asking the question. The State responded that the question went to the extent of Morman's injuries, not the effect those injuries had on her children. The State further clarified that it would not be asking questions regarding whether the children had nightmares after the incident. The trial court overruled Hartwell's objection, and Morman answered "no." The State moved on to another line of questioning.

Morman testified regarding the extent of her injuries; she did not testify regarding the effect that the crime had had on her life or how the incident had affected her and her family. *See Reynolds,* 371 S.W.3d at 525–26; *Mathis v. State*, 67 S.W.3d 918, 928 (Tex. Crim. App. 2002) (allowing testimony regarding the "day to day" medical care the victim needed after the commission of the crime). The State had the burden to prove that Morman suffered serious bodily injury as a result of Hartwell's actions—the State's question regarding the extent of her injuries was relevant to the issues in the case and did not address either Morman's character or effects of the crime on either her or her family. *See Love,* 199 S.W.3d at 456–57; *Mathis,* 67 S.W.2d at 928.

We therefore conclude that Morman's testimony does not constitute inadmissible victim-impact evidence. Thus, the trial court did not abuse its discretion in permitting this testimony.

14

We overrule Hartwell's fourth issue.

## D.     Lay Opinion Testimony

By his fifth and sixth issues, Hartwell challenges the admission of lay opinion testimony that he contends was not based on the testifying witnesses' own perceptions. Specifically, Hartwell contends that the witnesses, Morman and Blount, testified impermissibly that Hartwell knew Morman was there when he initially struck her with the vehicle and subsequently ran her over. [6]

Admission of lay-opinion testimony is controlled by Texas Rule of Evidence 701. When conducting a rule 701 evaluation, the trial court must decide:   (1) whether the opinion is rationally based on perceptions of the witness; and (2) whether it is helpful to a clear understanding of the witness' testimony or to a determination of a fact in issue. TEX. R. EVID. 701; *Fairow v. State,* 943 S.W.2d 895, 898 (Tex. Crim. App. 1997) (en banc). The initial requirement that an opinion be rationally based on the perceptions of the witness is itself composed of two parts.   *See* TEX. R. EVID. 701; *Fairow,* 943 S.W.2d at 898.   "First, the witness must establish personal knowledge of the events from which his opinion is drawn and, second, the opinion drawn must be rationally based on that knowledge."   *Fairow,* 943 S.W.2d at 898 (citing WENDORF, SCHLUETER & BARTON, TEX. RULES OF EVIDENCE MANUAL, § VII (4th ed. 1995)).

Rule 701 requires the proponent of lay-opinion testimony to establish, as a predicate, that the witness has personal knowledge of the events upon which his opinion is based.   *See id.*   Personal knowledge will generally come directly from the witness'

---

[6] Hartwell's fifth issue challenges Morman's lay opinion testimony, and his sixth issue challenges Blount's lay opinion testimony.

senses. *Id.; see, e.g., Smith v. State*, 683 S.W.2d 393, 404 (Tex. Crim. App. 1984). An opinion will satisfy the personal knowledge requirement of rule 701 if it is an interpretation of the witness's objective perception of events—i.e., his own senses or experience. *Fairow,* 943 S.W.2d at 898–99; *Doyle v. State*, 875 S.W.2d 21, 23 (Tex. App.—Tyler 1994, no pet.).

After meeting the preliminary perception requirement, the trial court must then determine if the opinion is "rationally based on that perception" to satisfy the first prong of the rule 701 analysis. *Id.* at 899–900. An opinion is "rationally based on perception" if it is an opinion that a "reasonable person could draw under the circumstances." *Id.* at 900 (citing GOODE, WELLBORN & SHARLOT, 2 TEX. PRACTICE GUIDE TO THE TEX. RULES OF EVIDENCE: CIVIL AND CRIMINAL, § 701.2). A determination that the witness' opinion is rationally based on his perception satisfies the second prong of the first step of the rule 701 analysis. *See id.*

The second prong of the analysis for determining admissibility under rule 701 is a determination that the opinion is helpful to the trier of fact in either understanding the witness's testimony or determining a fact in issue. *Id.* There is not a "bright line" indicating when an opinion is helpful. *Id.* This consideration is especially prudent when the opinion concerns culpable mental state. *Id.*

### 1. Morman's Lay Opinion Testimony

In the present case, Morman testified regarding the factual events leading to the incident in question. In response to a question asking why she believed Hartwell knew she was there, she testified:

> Because I was audible as I approached the car, I said, "Hey, this is my car," and this guy, the way he reversed out of that parking spot, he was getting

out of there for a reason, and it was because I was standing there on the side of the car. I mean, obviously he didn't have anywhere to go or he wasn't in too big of a hurry if he decided to take the long way out of the parking lot. I mean, I know that parking lot, and I know that there are better and easier ways to get out of the parking lot if you are in a hurry. There is no reason to take the back of the parking lot and come back around just to get to the exit to the street when the exit was actually facing—actually behind the car. I mean it pretty much seems like he took a detour around the parking lot. He knew I was there.

She had previously testified that: (1) she approached the car from the front; (2) she attempted to or did grab the passenger door; (3) she was laying in front of the driver's side of the vehicle before it struck her; (4) she was screaming; (5) there was a pause between the time she was initially struck and knocked down and when she was run over.

We first look to the first part of the 701 analysis. As a preliminary matter, we find that the State established the predicate that Morman had personal knowledge of the events upon which her testimony was based. *See Fairow,* 943 S.W.2d at 898–99*;* TEX. R. EVID. 602, 701. She actually saw the events to which that she testified. *See Fairow,* 943 S.W.2d at 898; *Smith,* 683 S.W.2d at 404.

The second phase of the first prong of the 701 analysis requires us to determine whether Morman's perception of the facts—i.e., that Hartwell knew she was there—is one that a reasonable person could draw under the circumstances. *Fairow,* 943 S.W.2d at 899*.* Morman testified that she directly approached the vehicle from the front, that she spoke out loud that the vehicle was hers, that she approached the passenger door and put her hand on it, and that the manner in which Hartwell reversed and the path he took to drive away was consistent with his knowledge that she was present. We determine that, based on Morman's first-hand factual perceptions, a rational person could form the opinion that Hartwell knew that she was present. *See id*

17

Rule 701's second requirement is that Morman's opinion help the jury determine a fact in issue: in this case, the mens rea requirement for the assault charge. *Id.; see* TEX. R. EVID. 701. Hartwell's mens rea was contested at trial—Hartwell contended that he had no knowledge that he ran over Morman. The State was required to establish that Hartwell acted with at least a reckless mens rea to obtain a conviction for aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.02 (West, Westlaw through 2015 R.S.). To that end, Morman's eye-witness testimony of the action and her perceptions of the event were helpful in assisting the jury determine whether Hartwell knew Morman was present when he hit her. Morman's opinion, summing up her testimony, could help the jury make their final factual determination regarding Hartwell's mental state. *See Osbourn v. State,* 92 S.W.3d 531, 535 (Tex. Crim. App. 2002) (explaining that a witness' testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations).

We determine Morman's opinion testimony complied with the personal knowledge and helpfulness requirements of Texas Rule of Evidence 701. *See Fairow,* 943 S.W.2d at 898–900; TEX. R. EVID. 701. The trial court did not abuse its discretion by allowing Morman's opinion testimony.

## 2. Blount's Lay Opinion Testimony

By his sixth issue, Hartwell challenges the admission of Blount's lay opinion testimony. Blount's testimony was similar to Morman's: both testified to the events immediately preceding the incident in question and opined that Hartwell knew Morman was present when Hartwell ran her over.

Blount specifically testified to the following: (1) Morman approached the vehicle

18

from the front; (2) Morman approached the vehicle's passenger side; (3) the passenger window was rolled down; (4) Morman placed her arms inside the passenger window; (5) Blount heard Morman screaming and crying "help" and "stop" loudly; (6) Blount was screaming "stop" and "what the f—" very loudly while running behind the vehicle; and (7) Hartwell drove around the building through the drive-through. Blount testified that there was no doubt in her mind that Hartwell knew that someone was there.

Again, we first determine whether Blount's opinion that Hartwell "knew someone was in front of the vehicle" was rationally based on her perceptions. *See Fairow,* 943 S.W.2d at 898. Preliminarily, we find that the State established the predicate that Blount had personal knowledge of the events upon which her testimony was based because she testified that she actually saw the event take place. *See* TEX. R. EVID. 602, 701; *Fairow,* 943 S.W.2d at 898; *Smith,* 683 S.W.2d at 404.

We now determine whether Blount's perception of the facts is one that a reasonable person could draw under the circumstances. *See Fairow,* 943 S.W.2d at 899. Blount testified that she saw Morman approach the vehicle and put her arms inside it, that while Morman had her arms inside the vehicle the van reversed, knocking her to the ground, that the window was open and both Blount and Morman were screaming loudly, and that Blount chased the vehicle. We determine that Blount's first-hand factual perceptions would allow a rational person to form the opinion that Hartwell knew someone was present. *See id*

The second requirement for admissibility under rule 701 requires that Blount's opinion help the jury. *Id.; see* TEX. R. EVID. 701. As previously discussed, Hartwell's mens rea was disputed at trial and the State had to establish that Hartwell acted with at

19

least a reckless mens rea to obtain a conviction for aggravated robbery. *See* Tex. Penal Code Ann. § 29.03. To that end, Blount's eye-witness testimony and her perception of the event were helpful in assisting the jury determine whether Hartwell knew Morman was present when he hit her. Blount's opinion summed up her testimony and was a rational conclusion from the facts based on her personal knowledge. *See generally Osbourn,* 92 S.W.3d at 535.

We determine Blount's opinion testimony complied with the personal knowledge and helpfulness requirements of Texas Rule of Evidence 701. *See* Tex. R. Evid. 701; *Fairow,* 943 S.W.2d at 898–900. The trial court did not abuse its discretion by allowing Blount's opinion testimony.

We overrule Hartwell's fifth and sixth issues.

## V. INCLUSION OF VOLUNTARY INTOXICATION INSTRUCTION

By his seventh issue, Hartwell contends that the trial court erred when it included a voluntary intoxication instruction in the jury charge because the evidence did not support it.

### A. Standard of Review and Applicable Law

A claim of jury-charge error is governed by the procedures set forth in *Almanza v. State.* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (en banc) (op. on reh'g), *overruled on other grounds by Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988). We must first determine whether the trial court erred in its submission of the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). If error exists and appellant properly objected at trial, reversal is required if "some harm" resulted, i.e., if the error was "calculated to injure the rights of the defendant." *Id.* (quoting *Almanza*, 686 S.W.2d at

20

171).   If appellant failed to object, error must be "fundamental," and reversal will result only if the error was so egregious and created such harm that the defendant "has not had a fair and impartial trial."   *Id.* (quoting *Almanza*, 686 S.W.2d at 171).

"Texas law has long held that the trial court must charge the jury fully on the law applicable to every issue raised by the evidence, whether such evidence be produced by the State or the defense, and whether it is strong or feeble, unimpeached or contradicted." *Taylor v. State,* 856 S.W.2d 459, 470 (Tex. App.—Houston [1st Dist.] 1993), *aff'd,* 885 S.W.2d 154 (Tex. Crim. App. 1994).   "Further, the trial court must give instructions that are applicable to every legitimate deduction from the evidence."   *Id.; Gilmore v. State,* 666 S.W.2d 136, 156 (Tex. App.—Amarillo 1983, pet. ref'd).   If the trial court determines the evidence raises an issue and a charge on such issue is properly requested, then the trial court must give a charge on that issue. *Taylor,* 856 S.W.2d at 470*; Gilmore*, 666 S.W.2d at 156.

### B.     Discussion

In this case, the proper inquiry requires us to determine whether trial evidence raised a voluntary intoxication issue, therefore warranting an instruction.[7]   *See Taylor,* 856 S.W.2d at 470; *Gilmore,* 666 S.W.2d at 156.   The State admitted a video of Hartwell's custodial statement to Detective Boline.   In that statement, Hartwell made numerous references to drinking alcohol on the night in question.   Twice Hartwell told Boline that he was not "that impaired."   He also admitted to drinking beer with Voigt the evening of the incident, and he stated that Voigt's wife provided more beer than he

---

[7] "A voluntary intoxication instruction is appropriate if there is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions."   *Sakil v. State,* 287 S.W.3d 23, 26 (Tex. Crim. App. 2009).

21

anticipated. We find this evidence was sufficient to support the trial court's voluntary intoxication instruction. *See Taylor,* 856 S.W.2d at 472–73; *Williams v. State,* 576 S.W.2d 507, 510 (Tex. Crim. App. 1978) (finding the voluntary instruction proper when the only evidence tending to show intoxication was appellant's statement that he had been drinking at the time of the offense and had had too much to drink, though appellant's comments were not supported by any other evidence at trial). The State requested an instruction supported by the evidence—the trial court was duty bound to include the instruction in the charge and did not err in so doing. *See Taylor,* 856 S.W.2d at 470*; Gilmore*, 666 S.W.2d at 156.

We overrule Hartwell's seventh issue.

## VI. ENHANCEMENT ERROR

By his eighth issue, Hartwell contends that the evidence was legally insufficient to support the use of a prior felony conviction for purposes of enhancement as a habitual offender. Specifically, Hartwell contends that his prior conviction for the unauthorized use of a motor vehicle does not qualify for enhancement pursuant to section 12.42(d) of the Texas Penal Code. *See* TEX. PENAL CODE. ANN. § 12.42(d) (West, Westlaw through 2015 R.S.).

### A. Standard of Review and Applicable Law

"A claim regarding sufficiency of the evidence need not be preserved for review at the trial level and is not waived by the failure to do so." *Rankin v. State*, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001). On appeal, Hartwell challenges the sufficiency of the evidence to support one of the indictment's enhancement paragraphs, not the inclusion of that paragraph itself. Thus, he can raise this issue on appeal even though he did not

22

object to the paragraph until after the jury returned a verdict of guilty. *See Tomlin v. State*, 722 S.W.2d 702, 705 (Tex. Crim. App. 1987).

We test the sufficiency of the evidence via the standard set forth in *Jackson v. Virginia* and against the allegations contained in a hypothetically correct jury charge. 443 U.S. 307 (1979); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). These standards apply irrespective of whether the appellant attacks the sufficiency of the evidence underlying the current conviction or the "affirmative findings necessary to sustain the imposition of an enhanced punishment." *Young v. State*, 14 S.W.3d 748, 750 (Tex. Crim. App. 2000). When reviewing the legal sufficiency of the evidence at punishment, we view all the evidence in the light most favorable to the verdict to see whether a rational fact-finder could find the essential elements of the crime beyond a reasonable doubt. *Id.*

**B.     Discussion**

In the instant case, Hartwell's conviction was enhanced by a finding that he was a habitual offender. The relevant "habitual offender" subsection of the Texas Penal Code provides the following:

> [I]f it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years. A previous conviction for a state jail felony punishable under *Section 12.35(a)* may *not* be used for enhancement purposes under this section.

TEX. PENAL CODE ANN. § 12.42(d) (emphasis added). The State had the burden to prove, beyond a reasonable doubt, that appellant committed the primary offense, as well as the

23

two enhancement offenses. *See Ex parte Augusta,* 639 S.W.2d 481, 484–85 (Tex. Crim. App. 1982), *overruled on other grounds, Bell v. State*, 994 S.W.2d 173 (Tex. Crim. App. 1999); *Williams v. State*, 980 S.W.2d 222, 226 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd).

Thus, for the State to show that Hartwell was subject to punishment as a two-time habitual offender, it was required to show beyond a reasonable doubt that before commission of the primary offense—aggravated robbery—Hartwell had been finally convicted of two felonies that were subject to enhancement under section 12.42(d). *See id.* § 12.42(d). For proof of the enhancement the State offered a prior judgment into evidence.[8] The prior judgment indicated that Hartwell had pled guilty to the offense of the unauthorized use of a vehicle—a state jail felony—and had been sentenced pursuant to section 12.35 of the penal code. *See id.* § 12.35. Section 12.35 of the Texas Penal Code provides a range of punishments applicable for an individual convicted of a state jail felony. *See* TEX. PEN. CODE ANN. § 12.35(a)–(c) (West, Westlaw through 2015 R.S.).

However, the judgment on Hartwell's prior conviction did not specify whether he was punished under subsection (a) or (c) of section 12.35. There was no other evidence produced at trial that indicated whether he was punished pursuant to subsection (a) or (c). This is important because section 12.42(d) provides that if his prior conviction was under section 12.35(a), it may not be used for enhancement purposes. *See id.* at § 12.42(d). The State admits that it is impossible to tell from the record whether the prior conviction in paragraph one was sufficient to enhance Hartwell's sentence into a habitual

---

[8] Hartwell does not contest the judgment on the second prior felony conviction that was used to support his enhancement.

24

range of punishment.  *See* TEX. PENAL CODE ANN. § 12.42(d).

Because there is no evidence in the record establishing that Hartwell's prior conviction for unauthorized use of a vehicle was eligible to be utilized to enhance Hartwell's sentence, we find the evidence was legally insufficient to support the enhanced sentence pursuant to section 12.42(d) of the Texas Penal Code.  *See id.*

We sustain Hartwell's eighth issue and do not reach Hartwell's remaining issues contesting his punishment.  *See* TEX. R. APP. P. 47.1.

### VIII.  CONCLUSION

Having determined that no error occurred at the guilt stage of trial, but holding that there is insufficient evidence to support the jury's finding of true to the first enhancement allegation, we affirm in part, and reverse in part the trial court's judgment and remand for a new trial on punishment.[9]

NELDA V. RODRIGUEZ
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
2nd day of July, 2015.

---

[9] Generally, when there is legally insufficient evidence to support a conviction as alleged in the indictment, we reverse and render the judgment that should have been rendered.  *See* TEX. R. APP. P. 43.2(c), 51.2(d); *Burks v. United States*, 437 U.S. 1, 16–18 (1978); *Greene v. Massey*, 437 U.S. 19, 24–25 (1978*); Clewis v. State*, 922 S.W.2d 126, 133–34 (Tex. Crim. App. 1996).  In this case, however, only the jury's decision on punishment is affected by the lack of evidence to support the enhancement paragraph. Thus, we will reverse the judgment and remand for a new trial on the issue of punishment only.  *C.f.,* TEX. CODE CRIM. PROC. ANN. art. 44.29(b) (West, Westlaw through 2015 R.S.); *Dixon v. State*, 932 S.W.2d 567, 571 (Tex. App.—Tyler 1995, no pet.) (relying on article 44.29(b) and holding that reversal and remand for new punishment was required where there was insufficient evidence to support punishment due to lack of plea to enhancement allegations).