

# NUMBER 13-20-00132-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

| | |
|---|---|
| **MICHAEL ALLEN TREVINO,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

---

### On appeal from the 23rd District Court
### of Matagorda County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Longoria, Hinojosa, and Silva
### Memorandum Opinion by Justice Silva

Appellant Michael Allen Trevino appeals his capital murder conviction. *See* TEX. PENAL CODE. ANN. § 19.03 (a)(2). By two issues, Trevino argues that the trial court erred in denying his (1) motion to change venue and (2) motion to suppress his statements obtained in violation of his constitutional rights. *See* U.S. CONST. amends. V, VI. We affirm.

## I.    BACKGROUND

On October 13, 2017, seventeen-year-old Trevino was arrested for aggravated robbery and questioned regarding his involvement in the murder of Devin Davalos, a seventeen-year-old who had been reported missing one day prior. In a statement to law enforcement, Trevino admitted to conspiring with three other individuals to rob Davalos. The situation deteriorated and Davalos was forced into the trunk of his own vehicle, shot multiple times, and discarded in the Brazos River.[1] Trevino was subsequently charged with capital murder, with the aggravating element being that the murder occurred during the course of kidnapping or attempting to kidnap Davalos.[2] *See* TEX. PENAL CODE. ANN. § 19.03 (a)(2).

On January 30, 2019, Trevino filed a motion to change venue, arguing that the venire pool in Matagorda County was "severely poisoned with prejudice against [him]." Trevino attributed the prejudice to the dissemination of news reports, which he alleged "misstated several facts pertaining to [Trevino] and the case." Attached to his motion were two news articles and two notarized affidavits signed by his parents. *See* TEX. CODE CRIM. PROC. ANN. art. 31.03. Trevino did not submit his own affidavit in support of his motion. *See id.* The State responded to Trevino's motion and attached ten sworn, notarized affidavits to its response. *See id.* art. 31.04. The trial court overruled Trevino's motion

---

[1] Trevino provided conflicting statements regarding his acceptance of and assignment of responsibility.

[2] Because Trevino was seventeen at the time of the offense, he was charged as an adult. *See* TEX. PENAL CODE ANN. § 8.07; TEX. FAM. CODE ANN. § 51.02(2) (defining "child" for purposes of being subject to delinquency proceedings under the juvenile justice code as an individual "ten years of age or older and under 17 years of age").

following a hearing on February 27, 2019.

On March 6, 2019, Trevino filed a general motion to suppress evidence, challenging his warrantless arrest.[3] Supplemental motions to suppress followed, and Trevino asserted in his later filings that he had invoked his right to counsel during interrogations with law enforcement on October 13 and October 15, 2017. At a hearing on Trevino's motions to suppress, he equivocated. Trevino testified that he requested to speak to an attorney during his transport from the county jail to the Bay City Police Department and before entering the interrogation room on October 13. Trevino also testified that he had requested to speak to his mother—not an attorney. Trevino did not claim to have explicitly invoked his right to an attorney on October 15.

Texas Ranger David Chauvin testified that he interviewed Trevino on October 13 and again on October 15 at Trevino's request. According to Ranger Chauvin, he read Trevino his *Miranda* rights prior to initiating the interview on both dates, and Trevino never asked to speak to an attorney. Ranger Chauvin further testified that Trevino made several requests to talk to his mother and did so at the conclusion of the October 13 interview. An audio recording, which began at the start of transport[4] and ended at the conclusion of the interview, was also admitted into evidence at the motion to suppress hearing.

The trial court overruled Trevino's motions to suppress and issued findings of fact and conclusions of law.[5] In relevant part, the trial court found that Trevino "contends that

---

[3] Trevino was arrested pursuant to an arrest warrant.

[4] The recording includes when Trevino was *Mirandized*.

[5] This cause was abated on January 13, 2021, following an order from this Court granting Trevino's request that we instruct the trial court to make and file findings of fact and conclusions of law. *See* TEX. R.

he asked for an attorney when he was in the truck being transported" by Ranger Chauvin on October 13; Trevino "did not ask [sic] invoke his right to an attorney when questioned by Ranger Chauvin"; Trevino "states he did not ask for an attorney, but asked to speak to his mother" and "later explains that in his mind, asking to speak to his parents was the same as asking to speak to an attorney"; "[t]here is not an unambiguous request for counsel on the recording"; "[t]he recording contains the warnings required"; and Trevino affirmatively waived his right to speak with an attorney on October 13 and October 15. The trial court concluded that Trevino "did not unambiguously request counsel."

Following a jury trial and guilty verdict, Trevino was sentenced to life imprisonment. Trevino timely appealed.

## II. CHANGE OF VENUE

By his first issue, Trevino argues that the trial court abused its discretion in denying his motion for change of venue because he presented sufficient evidence that the "coverage by the local media in this case was arguably not accurate and objective," and the coverage was so prejudicial that it would deprive him of his right to have a fair and impartial trial in Matagorda County.

### A. Standard of Review and Applicable Law

"We review the trial court's ruling on a motion for a change of venue for an abuse of discretion." *Tracy v. State*, 597 S.W.3d 502, 509–10 (Tex. Crim. App. 2020) (citing

APP. P. 44.4; TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6; *Vasquez v. State*, 411 S.W.3d 918, 920 (Tex. Crim. App. 2013).

4

*Freeman v. State*, 340 S.W.3d 717, 724 (Tex. Crim. App. 2011)). A trial court's decision will be upheld if the decision falls within the zone of reasonable disagreement. *Id.* at 510.

The United States Constitution and Texas Constitution recognize a defendant's absolute right to an impartial jury trial. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10. Article 31.03(a) of the Texas Code of Criminal Procedure provides the procedure for when a defendant may request a change of venue to ensure that impartiality. TEX. CODE CRIM. PROC. ANN. art. 31.03(a). Under article 31.03, the defendant must file a written motion supported by "his own affidavit and the affidavit of at least two credible . . . residents of the county where the prosecution is instituted." *Id.* It must be shown that either (1) "there exists in the county where the prosecution is commenced so great a prejudice against him that he cannot obtain a fair and impartial trial," or (2) "there is a dangerous combination against him instigated by influential persons, by reason of which he cannot expect a fair trial." *See id.* A motion to change venue will be considered fatally defective if it lacks the statutorily required sworn affidavits. *Horner v. State*, 129 S.W.3d 210, 214 (Tex. App.—Corpus Christi–Edinburg 2004, pet. ref'd).

Where, as here, the defendant claims prejudice was created through media publicity, he must further prove that the publicity was "pervasive, prejudicial, and inflammatory." *Tracy*, 597 S.W.3d at 509 (quoting *Gonzalez v. State*, 222 S.W.3d 446, 449 (Tex. Crim. App. 2007)). "[N]ews stories that are accurate and objective in their coverage are generally considered . . . not to be prejudicial or inflammatory." *Id.* at 510 (citing *Gonzalez*, 222 S.W.3d at 451). "Extensive knowledge of the case or defendant in the community as a result of pretrial publicity" alone is likewise not sufficient. *Buntion v.*

*State*, 482 S.W.3d 58, 71 (Tex. Crim. App. 2016); *see Colone v. State*, 573 S.W.3d 249, 257 (Tex. Crim. App. 2019). The defendant carries the burden to show his entitlement to a change of venue—"a fairly extraordinary remedy." *Busby v. State*, 990 S.W.2d 263, 267–68 (Tex. Crim. App. 1999).

While a defendant's affidavits under article 31.03 are subject to "stringent requirements," "[t]he State, on the other hand, merely needs to show that it is indeed contesting the issue" under article 31.04. *Busby*, 990 S.W.2d at 268; *see* TEX. CODE CRIM. PROC. ANN. art. 31.04; *see also Halford v. State*, No. 10-16-00358-CR, 2017 WL 4079644, at *5 (Tex. App.—Waco Sept. 13, 2017, pet. ref'd) (mem. op., not designated for publication).

## B. Analysis

Article 31.03 requires the defendant to support his motion to change venue with his own affidavit. TEX. CODE CRIM. PROC. ANN. art. 31.03(a); *Donald v. State*, 453 S.W.2d 825, 827 (Tex. Crim. App. 1969); *Horner*, 129 S.W.3d at 214. We have reviewed Trevino's motion, its attachments, and the record, and we can find no affidavit by Trevino. Because Trevino failed to support his motion to change venue with his own affidavit as required by article 31.03, Trevino's motion was fatally defective. *See* TEX. CODE CRIM. PROC. ANN. art. 31.03(a); *Horner*, 129 S.W.3d at 214 (concluding the trial court did not abuse its discretion in denying the defendant's motion for change of venue where the defendant failed to include the requisite affidavits, an omission "render[ing] the motion fatally defective"). Therefore, the trial court did not abuse its discretion in denying Trevino's motion for change of venue. *See Tracy*, 597 S.W.3d at 510. We overrule Trevino's first issue.

6

### III. Motion to Suppress

By his second issue, Trevino argues that the trial court abused its discretion in denying his motion to suppress his recorded oral statements. Specifically, Trevino claims that law enforcement "ignored his request for counsel" made prior to and during his interrogation.

### A. Standard of Review and Applicable Law

We review a trial court's ruling on a motion to suppress evidence using a bifurcated standard of review. *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021), *cert. denied*, 142 S. Ct. 821 (2022); *Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012). "We afford almost total deference to the trial court's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor . . . ." *Pecina*, 361 S.W.3d at 79. "[W]e review de novo the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor." *Id.* We will affirm the trial court's ruling on a motion to suppress if it is supported by the record and "correct under any applicable theory of law." *Wells v. State*, 611 S.W.3d 396, 406 (Tex. Crim. App. 2020) (quoting *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016)).

"The Fifth Amendment prohibits the government from compelling a criminal suspect to bear witness against himself." *Pecina*, 361 S.W.3d at 74–75 (citing U.S. CONST. amend. V). The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the [a]ssistance of [c]ounsel for his defen[s]e." U.S. CONST. amend. VI; *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020)

("The Sixth Amendment right to counsel attaches when the prosecution has commenced."). *Miranda* warnings and article 38.22 of the Texas Code of Criminal Procedure "guard against abridgement of the suspect's [constitutional] rights." *McCambridge v. State*, 712 S.W.2d 499, 506 (Tex. Crim. App. 1986) (en banc); *see Miranda v. Arizona*, 384 U.S. 436, 445 (1966); TEX. CODE CRIM. PROC. ANN. art. 38.22. Therefore, before a defendant's "statement [may] be introduced into evidence against him at trial," it must be shown that a defendant "voluntarily and intelligently waive[d] his *Miranda* rights, including the right to have an attorney present during questioning." *Pecina*, 361 S.W.3d at 75; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22 (governing when an accused's written or oral statements made as a result of a custodial interrogation may be admissible in criminal proceedings).

A defendant may ask to speak with counsel at any time prior to or during a custodial interrogation, and the invocation requires law enforcement to cease all questioning "until counsel has been provided or the defendant initiates further communication with the police." *Hartwell v. State*, 476 S.W.3d 523, 530 (Tex. App.—Corpus Christi–Edinburg 2015, pet. ref'd) (citing *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981)). However, a defendant's request for counsel must be unambiguous and articulated with sufficient clarity so that "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Pecina*, 361 S.W.3d at 79 (quoting *Davis v. United States*, 512 U.S. 452, 459 (1994)). "[N]ot every mention of a lawyer will suffice to invoke the Fifth Amendment right to counsel during questioning." *State v. Negrete*, 630 S.W.3d 460, 466 (Tex. App.—Houston [1st Dist.] 2021, pet. ref'd); *State v. Norris*, 541

8

S.W.3d 862, 865–67 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (concluding statements such as "Well, give me a lawyer or something 'cause I'm not sure I have" and "I just want to make a phone call and call my sister and see if she could . . . go get me a lawyer or something" were not unambiguous and unequivocal requests for counsel). Moreover, a "request to speak to a parent is not equivalent to a request for an attorney." *Dewberry v. State*, 4 S.W.3d 735, 747 (Tex. Crim. App. 1999), *holding modified by Guidry v. State*, 9 S.W.3d 133 (Tex. Crim. App. 1999) (concluding appellant's request to speak to his father was not the equivalent of an invocation of his right to counsel and finding it "unnecessary to address" appellant's self-described "minor" status because appellant, a seventeen-year-old, "was considered an adult for purposes of criminal prosecution").

## B.    Analysis

Trevino presents a multifaceted argument for his second issue on appeal. To the extent Trevino means to raise a general voluntariness challenge under article 38.22 or related jury charge error, we conclude such issues have been inadequately briefed. *See* TEX. R. APP. P. 38.1(i) (appellant briefing requirements); *see generally Oursbourn v. State*, 259 S.W.3d 159, 173 (Tex. Crim. App. 2008) (reviewing the various statutes and claims which relate to jury instructions on confession voluntariness). Trevino's brief includes citation to authority governing statement admissibility and jury instructions. Trevino, however, never applies the law to the facts of the case.[6] The only application of the law

---

[6] Trevino does not, for example, provide record references or make mention of the evidence the jury heard which would warrant an involuntariness instruction, indicate what type of instruction was sought here, or explain how the error, if any, caused him harm. *See Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008) ("It is the defendant's responsibility to delineate which type of 'involuntariness' [instruction] he is claiming—a general (perhaps subjective) lack of voluntariness or a specific police-coerced lack of voluntariness—because the jury instruction is very different depending upon the type of claim."); *see*

9

in Trevino's brief concerned Trevino's assertion that he "unambiguously requested counsel" while being interrogated on October 13, 2017, or October 15, 2017. *See Pecina*, 361 S.W.3d at 79. We construe his second issue as such.

During the trial court's hearing on Trevino's motion to suppress, the following colloquy occurred:

| | |
|---|---|
| [Defense Counsel:] | Okay. So, what exactly did you say, if you can remember, to Officer Hadash? |
| [Trevino:] | I asked to talk to my mother because my mom's the only one that could get me an attorney because I was young, and I just barely end up in the adult system now. |
| [Defense Counsel:] | Okay. But did you ask for your mother, or did you ask for an attorney? |
| [Trevino:] | I asked for my mother, but usually my mom handles my, like, things like that. I didn't know better. I asked for an attorney, but my mama— you know what I mean? |
| [Defense Counsel:] | Okay. Well, I guess the question is: Did you actually say you wanted an attorney to Officer Hadash? |
| [Trevino:] | I asked to speak to an attorney, then I asked for my mother because my mother is the one that gets me an attorney, and my father. |
| . . . . | |
| [Defense Counsel:] | Okay. Did you know that you had to clearly ask for an attorney? |
| [Trevino:] | No, sir. |

*also Tubbs v. State*, No. 13-19-00295-CR, 2020 WL 6052560, at *3 (Tex. App.—Corpus Christi–Edinburg Oct. 8, 2020, pet. ref'd) (mem. op., not designated for publication) (concluding appellant's charge error complaint was inadequately briefed where appellant did not cite the correct standard of review or include relevant record citations for the evidence in support of his requested instruction).

| | |
|---|---|
| [Defense Counsel:] | Okay. But you knew the way to get an attorney was to speak to your parents? |
| [Trevino:] | Yes, sir. |
| . . . . | |
| [Defense Counsel:] | And your understanding was that once you got to speak to your parents, then you could inquire about an attorney? |
| [Trevino:] | Yes, sir. |
| [Defense Counsel:] | So, in your mind, asking to speak to your parents was equivalent to asking to speak to an attorney? |
| [Trevino:] | Yes, sir. |

On cross-examination, Trevino testified that he had explicitly asked to speak with an attorney twice—both instances occurring while he was in custody and en route to be interviewed on October 13, 2017. Trevino conceded that based on the timeline of events he testified to, his request "should be" heard within the first ten minutes of the State's recording. Trevino testified that he had reviewed the recording, but he could not recall whether he heard himself ask the officers to speak to an attorney. The reporter's record indicates that the trial court took a break in proceedings to listen to the recording.

Although Trevino maintains that he *had* invoked his right to counsel, he equivocated at the hearing and testified to his erroneous belief that his request to speak to his mother was synonymous with a request to speak to an attorney. *See Pecina*, 361 S.W.3d at 79; *Dewberry*, 4 S.W.3d at 747; *see, e.g., Davis v. State*, 313 S.W.3d 317, 340–41 (Tex. Crim. App. 2010) (concluding that a defendant's declaration, "I should have

11

a lawyer," was an ambiguous request for counsel); *cf. Negrete*, 630 S.W.3d at 468 ("Here, appellee expressed a definite desire to speak to someone and for that person to be an attorney."). Additionally, Ranger Chauvin testified that at no point did Trevino request to speak with an attorney. *See Pecina*, 361 S.W.3d at 79. We have reviewed the October 13, 2017 recording and are unable to find a statement by Trevino that resembles an invocation of this right. Absent evidence of an unequivocal request for counsel, the trial court did not abuse its discretion in denying Trevino's motion to suppress his statements to law enforcement. *See Wells*, 611 S.W.3d at 406. We overrule Trevino's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
21st day of July, 2022.

12